BUNCH *v.* McLESKEY.

**546**

No. 8141.   October 15, 1931.

*Slaton & Hopkins, Colquitt, Parker, Troutman & Arkwright,* and *Sidney Smith,* for plaintiff in error.

*John B. Gamble* and *Branch & Howard,* contra.

GILBERT, J. ■ The case came to this court on writ of certiorari to the Court of Appeals. On the argument of the case the respondent moved to dismiss the writ of certiorari, on the ground that it was improvidently granted. It is insisted that the case as presented by the petition for certiorari does not involve any grave or important questions of law. On examination of the petition for certiorari this court was of the opinion that the case contained unusual features and involved grave and important questions of law. The questions on which the writ was granted concern the law as to the master's responsibility for injury by the servant where the latter had deviated from the scope of the business of the master in which he was engaged; and as to the rate of per cent. which must be used in reducing the gross amount of recovery to present value. The motion to dismiss is denied.

■ One ground of the motion for new trial complains that the court charged the jury as follows: "But I charge you further, that if a servant or employee, while engaged in the business of his master, makes a slight deviation for the ends of his own, the master remains liable when the act was so closely connected with the master's affairs that, though the servant may derive some benefit from it, it may nevertheless be regarded as within the course of his employment." The judgment was affirmed on this ground by the Court of Appeals, and this forms one ground of the petition for certiorari. As we construe the evidence, it demands a finding that the truck-driver deviated from the scope of his employer's business. Plaintiff in error contends that under the specific instruction of the employer it was the duty of the truck-driver to re-

turn immediately to Athens from Eastville after transacting the business in Eastville for which he was expressly sent; that instead of so returning, the truck-driver disobeyed his instructions, left the scope of his employment, taking another road which was a much longer distance and not so direct, leading from Eastville to the main Atlanta-Athens highway a short distance east of Statham; that even if on reaching the Atlanta-Athens highway the truck-driver had then proceeded directly to Athens, the tragic homicide would not have occurred, because the truck-driver would not have then been in Statham and would have had no occasion to cross the railroad-track at that point; that instead of this the truck-driver on reaching the said highway turned west towards Statham, the opposite direction from Athens, and ran along said highway parallel with the Seaboard Air-Line track until he reached Statham, a distance variously estimated at from three quarters of a mile to a mile and a half; that on reaching Statham he turned suddenly to the right and ran on to the railroad-track immediately in front of the railway-train, and the tragedy occurred. The defendant in error insists that this was not a deviation, and if so it was only "slight." A diagram of the roads just mentioned is here inserted, not as being precisely correct in their dimensions, but approximately so as gathered from the evidence. We think the diagram is sufficiently correct to illustrate the principles involved.

The court erred in the respect contended for by movant. It was right and proper to submit to the jury whether or not the

truck-driver had so deviated from the prosecution of his master's business as to place himself without the scope of his employment.

Petitioners complain, however, that the court instructed the jury that "a slight deviation for the ends of his own, the master remains liable when the act was so closely connected with the master's affairs that, though the servant may derive some benefit from it, it may nevertheless be regarded as within the course of his employment." The court did not submit to the jury the question of whether or not the "deviation was slight." The court may have intended that the jury must find whether the deviation was "slight," and that they should apply the principles stated if such was their finding; but in a case of this character, where the question is so close, where the testimony as to negligence on both sides was so conflicting, the charge becomes so erroneous as to require a reversal. It became the duty of the jury to determine whether the act was "so closely connected with the master's affairs," without any standards or basis for determining this important question. Under the facts of this case it was a serious injury to the defendant to thus instruct the jury that under the evidence there was a slight deviation but nevertheless the act of the servant may be regarded as in the course of his employment.

The facts present an unusual case. The collision between the motor-truck and the railroad engine resulted in wrecking the truck, killing its driver, and derailing the engine, killing the engineer. The jury in this case by its verdict finds the truck-driver to have been negligent, and therefore that the master is liable for the homicide of the engineer. The jury found, as alleged in the plaintiff's petition, that the truck-driver negligently drove across the railroad track immediately in front of an oncoming train; that the train was so near the crossing when the truck-driver turned from the main highway across the railroad-track that the engineer was not at fault, but that the truck-driver's negligence was the proximate cause of the death of the engineer. From the record now in this court (a petition for certiorari to the Court of Appeals) we find that the widow of the truck-driver sued the railroad company for the death of her husband arising out of the same accident. It appears that the jury in that case found that the truck-driver was killed by reason of the negligence of the railroad engineer. Thus, separate juries, on substantially the same facts,

reached directly opposite results. In other words, they returned a verdict in favor of the widow in each instance. This emphasizes the fact that under the evidence a slight misdirection as to the law of the case is necessarily important. In this case we think the instruction of the court, of which complaint is made, in regard to "slight deviation" requires the grant of a new trial. For similar cases see Mathis v. Hirsch Compound Roofing Co. (N. J. L.), 153 Atl. 700; Healey v. Corkrill, 133 Ark. 327 (202 S. W. 229, L. R. A. 1918D, 115); *Powell* v. *Cortez,* 44 *Ga. App.* ; *Waller* v. *Southern Ice & Coal Co.,* 144 *Ga.* 695 (87 S. E. 888); *Greeson* v. *Bailey,* 167 *Ga.* 638 (146 S. E. 490), and cit.

■ In the amendment to the motion for a new trial complaint is made that the court erred in charging the jury as follows: "In reducing a sum of money to its present cash value, it has to be done on the basis of some rate of per cent., some interest rate. What would be a fair rate is a matter for you to determine, considering the value of money, the purchasing power, the commercial conditions, the demand for money or the lack of demand for money, and say what you think would be a fair rate of per cent. to which it should be reduced. If you should fix on six or seven per cent., then you can use another table that has been introduced, called the annuity table; but if you decide on any other rate of per cent., this table would not be applicable and you could not use it. You are not obliged to use it if you take six or seven per cent. If you think it right, you can use it, and it may simplify your method of calculation. It has three sets of columns, one marked 'age,' the one next to it marked 6, and one 7 per cent." Among the several criticisms is the following: "Said charge was an incorrect instruction with reference to the use of the annuity table, for that said charge permitted the jury to use either the 6 or 7 per cent. column in their discretion; where the rule of law is that in using said annuity table to reduce money to its present cash value the 7 per cent. column must be used." Inasmuch as we think the error in this charge was of sufficient importance to cause a reversal for the criticism just stated, it is not necessary to mention other criticisms. "In charging a jury with respect to the six per cent. and seven per cent. columns in an annuity table, the judge should direct them to use the latter." *Central of Ga. Ry. Co.* v. *Mosely,* 112 *Ga.* 914 (38 S. E. 350); see also *Florida &c. R. Co.* v. *Burney,*

98 *Ga.* 1 (26 S. E. 730); *Western & Atlantic R. Co.* v. *Davis,* 139 *Ga.* 493 (5) (77 S. E. 576).

Cases are cited by defendant in error where this court refused to reverse a judgment even though similar charges were held erronous; as, for instance, where under the facts the verdict was not excessive. It is also argued that in some of the cases just cited the question was obiter, or otherwise did not require the grant of a new trial. Under the facts of the present case there should be a new trial. The issues of fact are close. The principles stated in the decisions cited to sustain our ruling are sound. Computation of interest, etc., are matters determined by the law of the forum. In a case brought on a State statute the law of the State governs. The proper measure of damages in cases arising under the Federal statutes must be settled according to principles administered in the Federal courts. Chesapeake & Ohio R. Co. *v.* Kelly, 241 U. S. 485 (36 Sup. Ct. 630, 60 L. ed. 1117, L. R. A. 1917F, 367). We think the law of the forum is in Georgia, as ruled above.

■ In the eighteenth, nineteenth, and twentieth grounds of the petition for certiorari it is complained that the Court of Appeals erred in affirming the judgment refusing to grant a new trial, because of the trial court's refusal of requests to charge as set forth in the fifth, sixth, and seventh grounds of the motion for new trial. There were three written requests duly tendered, all of which may be treated together. These requests sought instructions to the jury in accord with the provisions of the act of the General Assembly approved August 19, 1918 (Ga. Laws 1918, p. 212, § 4). This section makes provision for the exercise of care and diligence by the engineer operating a railroad locomotive, and makes the failure to exercise such care a misdemeanor. The court was requested to charge that where there was a failure to exercise such care, the same constituted negligence per se. Some of the provisions of the act of 1918 were given in charge to the jury, but the particular feature just mentioned was not. Under the evidence in the case we cannot say that the court erred in refusing the requests for instructions to the jury.

*Judgment reversed. All the Justices concur, Atkinson, J., specially.*