39698. PRATT v. MELTON.

Decided November 8, 1962—
Rehearing denied December 17, 1962.

*Rose & Lappas, Frank P. Lappas,* for plaintiff in error.

*Smith, Field, Ringel, Martin & Carr, Palmer H. Ansley,* contra.

BELL, Judge. The sole question to be resolved here is whether or not at the time of the collision the defendant's employee had deviated from his employment and whether the deviation, if any, was such as to authorize the court, as a matter of law, to

conclude that the employee was not acting within the scope of his employment at the time of the collision.

One of the leading cases on deviation is *Dawson Chevrolet v. Ford,* 47 Ga. App. 312 (170 SE 306), which pointed out that if the servant steps aside from the master's business, for however short a time, to do an act entirely disconnected with it, the master is not liable for any resulting injury. In *Dawson* the employee had, as one of his duties, to obtain ice every morning from the Atlantic Ice & Coal Company and return with it to the employer's place of business. On the occasion of the collision, he obtained the ice and proceeded with it in the automobile in the *opposite* direction from his employer's place of business and ran into plaintiff's vehicle about 1¼ miles from town in the opposite direction from the ice company's plant relative to the employer's place of business. The driver testified that he was not there on any business of the employer but was riding for his own pleasure. Citing *Savannah Electric Co. v. Hodges,* 6 Ga. App. 470 (65 SE 322), this court held that where the servant steps aside from the employer's business for no matter how short a time to do an act entirely disconnected with it, the master is not liable. The test quoted with approval was that the master is liable for the tortious action of the servant not merely when it is done within the time covered by the employment, but the act must also be done in the prosecution of the master's business. The first inquiry is whether the servant was at the time engaged in serving the master, and if he was not, though the act occurred during working hours, the relation of master and servant is suspended for the period he ceased to be serving the master's purposes.

In the factual situation before us in this case, there are numerous routes one can take to proceed in a motor vehicle from the defendant's place of business to Carter's Mannequin Studio where the car was to be delivered with the driver instructed to go directly to it. One of the more direct routes would be to go south on Courtland Street to its intersection with Edgewood Avenue, right (or west) on Edgewood to its intersection with Marietta, then on Marietta to Broad, and left on Broad to No. 178. The place where the collision took place was approximately four-tenths of a mile from the intersection of Courtland and

Edgewood but *east* of the intersection, while the destination of the driver, to carry out the business with which his employer had charged him, would have been to go *west* from this intersection. Under the undisputed testimony, the motor vehicle was not only *traveling in the wrong direction at some distance from the direct route* but also was traveling *away from the intended destination at a high rate of speed.* Contrary to the *Dawson* case, there is no explanation in the record as to the objective the driver had in mind at the time of the collision.

Plaintiff relies strongly upon *Bunch v. McLeskey,* 173 Ga. 545 (2), supra. In that case the truck driver appears to have had specific instructions from the employer to return immediately to Athens from Eastville where he had been sent on business; that Athens was 13.8 miles northeast of Eastville; but instead of taking this direct route, the truck driver disobeyed his instructions and went northwest from Eastville 10 miles to the Statham-Athens Road. If he had then turned east to Athens, he would have traveled a total of 26 miles in making this circuitous trip from Eastville to Athens. Instead, however, he turned west toward Statham and was traveling then in the opposite direction from Athens; he traveled west a distance variously estimated at from three-fourths of a mile to a mile and a half; on reaching Statham he turned suddenly north and ran onto a railroad track immediately in front of a train. A collision occurred in which both the truck driver and the railroad engineer were killed. The widow of the engineer brought action against the employer of the truck driver to recover for the death. Although the Supreme Court held the trial court erred in instructing the jury, in effect, that there was a slight deviation of the employee from the scope of his employment, it stated that the evidence demanded a finding that the truck driver deviated from the scope of the employment. It was held that under these facts it became the duty of the jury to determine whether the act was "so closely connected with the master's affair" as to make the employer answerable for the negligence of the employee. The Supreme Court pointed out that under the facts of that case the question was so close that the charge as to slight deviation became erroneous and required a reversal.

As we read the decision in *Bunch,* the jury would have been

authorized to find that although the employee went 10 miles northwesterly instead of 13.8 miles northeasterly, then turned in the opposite direction from the route he should have taken, traveled about a mile and then turned at right angles from the direction in which he should have been traveling, he still could have been found to be within the scope of his employment. It is important to note that nothing appears in the opinion in the *Bunch* case, and nothing appears in the record in the present action, to show the purpose which motivated the employee to travel in the opposite direction from the direct route he should have taken in carrying out the mission he had to accomplish. Furthermore, in *Bunch* the driver had proceeded by turning three different times in directions away from the route he should have taken, and was farther from his destination at the time of the collision than when he started his return trip. While there appears to be considerable doubt as to the soundness of the decision in the *Bunch* case, we are bound to follow it as the deviation in the case before us appears to be much less in degree, time and space than that in *Bunch*. Furthermore, in *Bunch* the routes were well defined while here a maze of city streets was involved.

Moreover, if it is shown that the driver operating the master's vehicle was in the master's employment at the time of the injury, the presumption arises that the driver was engaged in the master's business and within the scope of his employment, and the burden is then placed upon the master to show that the person operating the machine was not his servant or was not at the time of the injury engaged in the business of the master. *Dawson Motor Co. v. Petty*, 53 Ga. App. 746, 749 (186 SE 877) and authorities there cited.

The defendant contends that the present case is distinguishable from the other cases in which the departure from employment was held to be a jury question since the evidence here shows that the driver fled from the scene of the accident and has not since been heard from. The defendant urges that this is a circumstance which the jury could consider favorable to the defendant. While concurring that the jury could consider this circumstance favorable to the defendant, the jury would not be

bound to do so nor would the fact demand a verdict in favor of the defendant.

Except in plain and palpable cases the question whether the tortious act was "so closely connected with the master's affairs" that it was within the scope of the servant's employment is for the jury to determine. *Bunch v. McLeskey*, 173 Ga. 545, supra. *Cooley v. Tate*, 87 Ga. App. 1, 7 (73 SE2d 72); *Henry v. Hoch*, 76 Ga. App. 819 (47 SE2d 159); *Parker v. Smith*, 66 Ga. App. 567 (18 SE2d 559); and *Gomez v. Great A. & P. Tea Co.*, 48 Ga. App. 398, 400 (172 SE 750). In most of the cases relied upon by the defendant there was evidence that the driver was on a personal mission of his own not connected with his employment and thus the master was properly found or held to be not responsible.

The case of *Causey v. Swift & Co.*, 62 Ga. App. 893 (10 SE2d 228), holding that the evidence authorized the trial court to direct a verdict for the defendant because of such a gross deviation which placed the employee outside the scope of his employment, appears to be contra to *Bunch* and the cases cited above. Furthermore, *Causey* has never been followed or cited in any subsequent case decided by our appellate courts. From the cases collected in the annotation in 52 ALR2d 350, 385, it would appear that the majority rule, under the facts of *Causey*, is contrary to its decision, the other cases in the annotation holding either that the employee was within his employment as a matter of law or, at most, that a jury issue was raised by the evidence.

The trial court erred in directing a verdict for the defendant.

*Judgment reversed. Felton, C. J., and Hall, J., concur.*