## 52582. DAVIS GAS COMPANY v. POWELL et al.

STOLZ, Judge.

1. The central issue in this appeal is whether the acts of defendant-appellant's employees were within the scope and course of their employment so as to impose liability on their employer for the consequences of those acts.

Whatley and Lamb were employees of Davis Gas Company on the date of the death of Patricia Powell Cox. They had been instructed by Hamp Davis, their boss, to go to Harold Ivey's farm that afternoon to pick up wheels for a tobacco barn. They used the truck assigned to Cliff Whatley for this purpose. Both had trucks assigned to them which they used interchangeably. Each had the use of the truck assigned to him. They drove them home at night, and back to work in the mornings. The trucks were used on calls at all hours and could be used for personal reasons, although they weren't "supposed" to. There were several routes to Harold Ivey's farm and they had authority to use whichever they chose.

They were given no definite time to get to or get back from Ivey's farm. They picked up sixteen-year-old defendant Henderson on the way there, bought gas and charged it to Davis Gas Co. and proceeded to the farm. When they picked up Henderson, they knew she had been drinking, and was acting funny or high. Defendant Henderson stated that Whatley stopped on the way, purchased beer and gave it to her to drink. She drank the beer with Lamb. Whatley drank no beer, stating "I'm working" and "I don't drink while I'm working." After she drank more beer, defendant Henderson started acting "really wild" and using vulgar and lewd language. She

seemed sick, and both Whatley and Lamb got out of the truck, leaving it stopped in the lane of traffic, keys in the ignition, engine running, automatic transmission in park and without the emergency brake on. She was the only one left in the truck and was in control of it. At this time, they were a few miles from Ivey's farm, and still had the intention of going there. The truck was headed in the direction of Norman Park or Cool Springs, depending on which testimony is believed. Their purpose in being out there when the girl took the truck, was still to go to Ivey's farm. They considered themselves to be on the job. It was company business to go to Ivey's farm. A short time later, while defendant Henderson was driving the truck in a drunken condition, it collided with the vehicle Patricia Powell Cox was driving. Patricia Powell Cox died as a result of the collision. Whatley and Lamb were paid a full day's pay, and were still employed by the defendant company at the time of trial.

The jury returned a verdict for the plaintiff against all the defendants. Only Davis Gas Co. has appealed. On appeal the evidence is construed most strongly to support and sustain the verdict and judgment of the trial court. *Worn v. Sea-Cold Services, Inc.,* 135 Ga. App. 256 (2, 3) (217 SE2d 425) and cits. As has been noted, there were several routes from Moultrie, Georgia, to Harold Ivey's farm near Norman Park, Georgia. The route taken carried the two employees and Miss Henderson onto a county dirt road at its intersection with the Norman Park - Cool Springs highway. At this point, Miss Henderson said she was sick, and asked to be taken home. She lived just down the road apiece. First dirt road on the left, first house on the right. The employee drove down the road "a little piece" when Miss Henderson fell over toward the dash. At this point, the truck was stopped and the events occurred which led to Miss Henderson's taking the truck and the subsequent tragedy. Thus, the deviation is the "little piece" the employee drove down the Norman Park - Cool Springs highway prior to the truck's being stopped.

"The extent of deviation by a servant from the usual route or method in performing service directed by the master may be so slight relatively that, as a matter of law,

it can be said that it does not constitute a complete departure from the master's service, and that the servant is still engaged in his master's business, so as to render the latter liable for his negligence in driving. Under other circumstances, the deviation may be so great and unusual that it can be said as a matter of law that it does constitute an abandonment of the master's service. However, in most cases, that is, cases falling between these extremes, the liability of the master for the negligence of the employee in the course of some deviation is a question of fact for the jury to decide. The deviation may be so uncertain in extent or degree that the inference must be drawn by the trial jury as to whether or not it has been such an abandonment as to relieve the master from responsibility for the servant's action. Where the evidence shows that the employee was not taking the shortest or most direct route for the performance of the duties of his employment, or had stopped en route, whether the deviation was so substantial as to constitute a departure from the employment, or whether he was nevertheless acting within the scope of his employment, is generally a question of fact for the jury. Whether the place where the accident occurred was or was not a place at which the servant could have been while he was engaged in the performance of the duties of his employment is a factor in determining whether submission to the jury was authorized. . . The mere fact that, at the time of an accident, the driver of an automobile intended to deviate from his regular route the distance of about thirteen blocks to take a woman to her home is not such evidence of a marked and unusual deviation as requires the court to hold as matter of law that the driver was not on his master's business." 6 Blashfield, Automobile Law and Practice (3rd Ed.) 245, § 253.78. See Perry v. Haritos, 100 Conn. 476 (124 A 44).

"It is, of course, the general rule that 'if a servant steps aside from his master's business, for however short a time, to do an act entirely disconnected with it, and injury results to another from such independent voluntary act, the servant may be liable, but the master is not.' *Atlanta Coca-Cola Bottling Co. v. Brown,* 46 Ga. App. 451 (167 SE 776), and cit.; *Henderson v. Nolting First Mortgage*

844

*Corporation,* 184 Ga. 724, 733 (193 SE 347, 114 ALR 1022). However, if a servant or employee, while engaged in the business of his master, makes a slight deviation for ends of his own, the master remains liable when the act is so closely connected with the master's affairs that, though the servant may derive some benefit from it, it may nevertheless fairly be regarded as within the scope of his employment. *Limerick v. Roberts,* 32 Ga. App. 755 (124 SE 806); *Jump v. Anderson,* 58 Ga. App. 126 (197 SE 644). Where there is a deviation the question should ordinarily be submitted to the jury as to whether or not the deviation from the master's business was slight, so slight as not to affect the master's responsibility for the negligent act." *Parker v. Smith,* 66 Ga. App. 567, 569 (18 SE2d 559).

The transcript of the evidence shows the extensive use of maps and diagrams showing exactly where all events occurred. In *Parker,* supra, this court, applying the foregoing principles, affirmed the resolution of a deviation from employment by the jury in favor of the plaintiff.

In *Pratt v. Melton,* 107 Ga. App. 127 (129 SE2d 346), the sole issue to be resolved was one of deviation from employment. In the opinion, our court stated the following facts: "In the factual situation before us in this case, there are numerous routes one can take to proceed in a motor vehicle from the defendant's place of business to Carter's Mannequin Studio where the car was to be delivered with the driver instructed to go directly to it. One of the more direct routes would be to go south on Courtland Street to its intersection with Edgewood Avenue, right (or west) on Edgewood to its intersection with Marietta, then on Marietta to Broad, and left on Broad to No. 178. The place where the collision took place was approximately four-tenths of a mile from the intersection of Courtland and Edgewood but *east* of the intersection, while the destination of the driver, to carry out the business with which his employer had charged him, would have been to go *west* from this intersection. Under the undisputed testimony, the motor vehicle was not only *traveling in the wrong direction at some distance from the direct route* but also was traveling *away from the intended destination at a high rate of speed. . .* [T]here is no explanation in the

record as to the objective the driver had in mind at the time of the collision." *Pratt,* supra, p. 130. In reversing the direction of a verdict for the defendant, our court stated: "[I]f it is shown that the driver operating the master's vehicle was in the master's employment at the time of the injury, the presumption arises that the driver was engaged in the master's business and within the scope of his employment, and the burden is then placed upon the master to show that the person operating the machine was not his servant or was not at the time of the injury engaged in the business of the master. *Dawson Motor Co. v. Petty,* 53 Ga. App. 746, 749 (186 SE 877) and authorities there cited. The defendant contends that the present case is distinguishable from the other cases in which the departure from employment was held to be a jury question since the evidence here shows that the driver fled from the scene of the accident and has not since been heard from. The defendant urges that this is a circumstance which the jury could consider favorable to the defendant. While concurring that the jury could consider this circumstance favorable to the defendant, the jury would not be bound to do so nor would the fact demand a verdict in favor of the defendant." *Pratt,* supra, 132.

In *Ayers v. Barney A. Smith Motors,* 112 Ga. App. 581 (145 SE2d 753), the defendant employer (automobile dealer) provided the defendant salesman with a demonstrator automobile. The litigation arose out of a fatal collision involving the defendant salesman's operation of the demonstrator automobile while en route from Macon, Georgia, to Simpsonville, S. C., for a social visit. The trial court's grant of a summary judgment for the defendant was reversed on appeal. The following is an excerpt from this court's opinion: "The fact that this defendant owned the automobile involved in the fatal occurrence and that its employee was driving the vehicle at the time, was sufficient to raise a presumption that the employee was operating the defendant's automobile within the scope of his employment. *Dawson Motor Co. v. Petty,* 53 Ga. App. 746 (1) (186 SE 877); *Hall v. Cassell,* 79 Ga. App. 7 (52 SE2d 639); *Hix-Green Co. v. Dowis,* 79 Ga. App. 412 (2) (53 SE2d 601); *Fielder v. Davison,* 139 Ga. 509 (77 SE 618). This presumption is a rebuttable one, but 'in

order to overcome it as a matter of law the evidence of the defendant should be clear, positive, and uncontradicted that the servant was not at the time in the prosecution of his master's business or acting within the scope of his employment.' *Abelman v. Ormond,* 53 Ga. App. 753, 761 (187 SE 393). 'Where there are circumstances developed by the evidence other than those which gave rise to the presumption from which the jury might legitimately infer that the servant was acting within the scope of his employment the presumption is not overcome as a matter of law even though the master and servant positively testify that what he was doing was without the scope of his employment. The issue is generally one for the jury.' *F. E. Fortenberry & Sons, Inc. v. Malmberg,* 97 Ga. App. 162, 166 (102 SE2d 667)."

In *Veal v. Paulk,* 121 Ga. App. 575, 578 (6) (174 SE2d 465), "the evidence showed the collision occurred while the defendant's agent was driving the car while under the direction of the master in that he was sent from Fitzgerald to Albany to pick up another employee and to return, and the presumption arises that the driver was engaged in the master's business and within the scope of his employment. The burden was then placed upon the master to show that the person operating the vehicle engaged was not his servant and was not at the time of the injury in his business. While the defendant's evidence shows that the master gave the servant instructions as to how to travel to Albany and return and that the vehicle collided with another not on this route, yet this evidence is insufficient to demand a finding that he was not acting within the scope of his employment in going to Albany to pick up the employee. It became a jury question as to whether the presumption created had been overcome. See *Dawson Motor Co. v. Petty,* 53 Ga. App. 746, 749 (186 SE 877); *F. E. Fortenberry & Sons v. Malmberg,* 97 Ga. App. 162 (102 SE2d 667); *Pratt v. Melton,* 107 Ga. App. 127, 132 (129 SE2d 346); *Ayers v. Barney A. Smith Motors,* 112 Ga. App. 581 (145 SE2d 753)."

In the case before us, the transcript of the evidence shows the extensive use of maps and diagrams showing the route taken and the extent of the deviation. The jury had the issue of deviation before it for resolution.

Although they would have been authorized to find for the defendant, the evidence did not require them to do so and this court will not disturb the jury's resolution of this factual issue on appeal.

2. The remaining enumerations of error are without merit.

*Judgment affirmed. Bell, C. J., Deen, P. J., Quillian, P. J., McMurray and Smith, JJ., concur. Clark, Webb and Marshall, JJ., dissent.*

ARGUED SEPTEMBER 20, 1976 — DECIDED NOVEMBER 30, 1976 — REHEARING DENIED DECEMBER 17, 1976 — 

*Owens & Hilyer, Seymour S. Owens,* for appellant. *Reinhardt, Whitley & Sims, Ralph F. Simpson, Willie E. Lockett, Jr.,* for appellees.

CLARK, Judge, dissenting.

The central issue in this appeal is whether the acts of defendant-appellant's employees were within the scope and course of their employment so as to impose liability on their employer for the consequences of those acts. This appeal is by the defendant employer alone with error being enumerated inter alia, upon the trial court's failure to direct a verdict for employer-defendant and its failure to grant a judgment n.o.v.

Plaintiff's case is essentially that defendant's two employees, also co-defendants below, negligently permitted an intoxicated sixteen-year-old girl, also a co-defendant, to gain possession and control of the employer's pickup truck with which she negligently caused the death of plaintiff's decedent. The dispositive facts on the issue of whether or not such negligence was within the scope and course of employment are as follows.

Defendant-appellant directed the two employees to drive a company truck to a designated farm to pick up a piece of equipment. Shortly after departing they picked up the girl as a hitchhiker, which was in violation of company rules. The girl's testimony is that they invited her to join them on the truck, bought and gave her beer, that they drove to a dirt road, stopped the truck, and

proceeded to make sexual advances towards her. Using a subterfuge she managed to have them depart from the truck. Thereupon, she drove away without their permission to escape them.

Their testimony is that when they picked her up in violation of company rules, that she appeared to be "high," began to act "funny," and was soon drinking beer which she had with her. She soon appeared to be sick and asked to be taken home. They thereupon reversed their course and drove away from the direction of the farm, proceeding in the opposite direction from that which would have carried out their assignment. This was for the purpose of taking their passenger to her home. After driving a short distance she fell over and they stopped the truck to attend to her. The keys were in the ignition and the motor was still running. The employee on the passenger side exited the truck to wet a paper towel for her face. When she suddenly announced that she was about to vomit, the driver left the vehicle. Thereupon she took off with it. The collision between plaintiff's car and the truck which was reported to the employer and then to the police as "stolen," occurred some time thereafter.

1. "The act of a servant may be within the scope of his employment, though not done at the master's direction, or with his permission and even if his master does not know the act is being committed. The test is whether the act is done by the servant in connection with the master's business and for the purpose of promoting the master's interest." *American Oil Co. v. McCluskey,* 119 Ga. App. 475, 477 (2a) (167 SE2d 711). See *West Point Pepperell, Inc. v. Knowles,* 132 Ga. App. 253 (208 SE2d 17); *Westinghouse Elec. Corp. v. Scott,* 132 Ga. App. 245 (207 SE2d 705); *Harden v. Clarke,* 123 Ga. App. 142 (179 SE2d 667); *Marketing Sales Industries v. Roberts,* 118 Ga. App. 718 (165 SE2d 319).

This test, which looks to the relation or nonrelation of the tortious act to that which the servant was employed to do, has been variously stated as: whether or not the act was done to accomplish the ends of the servant's employment (*McGhee v. Kingman & Everett, Inc.,* 49 Ga. App. 767, 768 (2) (176 SE 55)); whether the act is so closely connected with the servant's employment as to be found a

part thereof (*Minnesota Mining &c. Co. v. Ellington,* 92 Ga. App. 24 (87 SE2d 665)); and whether the wrongful act was done in carrying on the normal functions of the servant's employment (*Godfrey v. Home Stores, Inc.,* 101 Ga. App. 269 (114 SE2d 202)).

2. The question of whether particular acts of a servant are within the scope and course of employment is normally for a jury. *Southern Bell Tel. & Tel. Co. v. Wallace,* 133 Ga. App. 213, 215 (210 SE2d 347). Where, however, the facts are clear and undisputed and only one conclusion can reasonably be reached, then the question is one for the courts as a matter of law. *West Point Pepperell, Inc. v. Knowles,* 132 Ga. App. 253, supra; *Westinghouse Elec. Corp. v. Scott,* 132 Ga. App. 245, supra; *Broome v. Primrose Tapestry Mills,* 59 Ga. App. 70 (200 SE 506); *Jump v. Anderson,* 58 Ga. App. 126 (197 SE 644).

Accepting either the girl's testimony or that of defendant's employees, there being none other on this point, it cannot be said that these employees were within the scope and course of their employment at the time of their tortious acts. Whether they were taking the girl, a stranger to them and the defendant, home in a direction away from their business destination, or whether they were attempting to seduce her, it is clear that such activity was personal to them. See generally *Fielder v. Davison,* 139 Ga. 509 (5) (77 SE 618); *Wilson v. Quick Tire Service,* 32 Ga. App. 310 (123 SE 733); *Price v. Star Service & Petroleum Corp.,* 119 Ga. App. 171 (166 SE2d 593); *Dawson Chevrolet Co. v. Ford,* 47 Ga. App. 312 (170 SE 306); *Reddy-Waldhauer-Maffett Co. v. Spivey,* 53 Ga. App. 117 (1) (185 SE 147). No purpose, interest or end of this defendant was being served by these employees under either version of the facts. See *Godfrey v. Home Stores, Inc.,* 101 Ga. App. 269, supra; *McGhee v. Kingman & Everett, Inc.,* 49 Ga. App. 767, supra; *Gomez v. Great A. & P. Tea Co.,* 48 Ga. App. 398 (172 SE 750).

Even though there is a presumption that the acts of a servant arising from the use of his employer's vehicle are within the scope and course of his employment, that presumption is overcome as a matter of law where, as here, there is no evidence that the servant "was even in

any remote way serving the benefit of his employer or acting on his behalf." *Massey v. Henderson,* 138 Ga. App. 565, 566 and cits.

3. The fact that defendant's employees were originally pursuing their master's instructions, and that they intended to return to their employment and complete the job they set out to do, is not dispositive of the issue. If a servant steps aside from the course of his employment to do an act not in furtherance of the work of his employment, for however short a time, then his master cannot be held liable for injuries resulting from the servant's negligence during that deviation. *Ga. Power Co. v. Shipp,* 195 Ga. 446 (3) (24 SE2d 764); *Gomez v. Great A. & P. Tea Co.,* 48 Ga. App. 398 (3), supra; *Dawson Chevrolet Co. v. Ford,* 47 Ga. App. 312, supra; *Savannah Elec. Co. v. Hodges,* 6 Ga. App. 470 (65 SE 322). As to nonliability generally of a master for acts of a servant who exceeds his authority by permitting another to ride in the employer's vehicle, see *Greeson v. Bailey,* 167 Ga. 638 (146 SE 490).

This is not one of those cases of "slight deviation" for the ends of the servant where the act was so closely connected with the master's affairs as to make the master liable for the torts of the servant. See *Davis v. Childers,* 134 Ga. App. 534 (5) (215 SE2d 297); *Limerick v. Roberts,* 32 Ga. App. 755 (1b) (124 SE 806). "The conduct of the servant took him outside the scope of his employment, and his conduct was a complete departure instead of a 'deviation' or 'detour' still incidental to his employment. *McIntyre v. Hartfelder-Garbutt Co.,* 9 Ga. App. 327 (71 SE 492); *Greeson v. Bailey,* 167 Ga. 638 (146 SE 490); *Powell v. Cortez,* 44 Ga. App. 205 (160 SE 698); *Dawson Chevrolet Co. v. Ford,* 47 Ga. App. 312 (170 SE 306); *Selman v. Wallace,* 45 Ga. App. 688 (165 SE 851)." *Reddy-Waldhauer-Maffett Co. v. Spivey,* 53 Ga. App. 117, 119 (185 SE 147).

4. The majority opinion notes that "Whatley and Lamb [the co-defendant employees] were paid a full day's pay, and were still employed by the defendant company at the time of trial." Under our view of the evidence, this element is not determinative. "Where the employee was acting exclusively for himself and was not acting at all for

the master, and did not profess to be acting for the employer, the mere retaining of the servant after knowledge of his tort would not constitute ratification binding the master." *Reddy-Waldhauer-Maffett Co. v. Spivey,* 53 Ga. App. 117 (3), supra.

5. Holding the view that the cases cited in this dissent are applicable to the facts in this case rather than those contained in the majority opinion I would reverse the trial court with direction that judgment be entered for Davis Gas Company with the judgments against the co-defendants remaining unimpaired.

I am authorized to state that Judges Webb and Marshall join with me in this dissent.