**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 21, 2020**

# In the Court of Appeals of Georgia

A20A0984. HOBBS, THROUGH HIS LEGAL GUARDIAN, MI-033 JOSHUA WILLIAM EAGLE v. INTEGRATED FIRE PROTECTION, INC.

MILLER, Presiding Judge.

In this wrongful death action, Ethan Wayne Hobbs, through his legal guardian Joshua William Eagle, filed suit against Integrated Fire Protection, Inc. ("IFP"), relating to his mother's death after a vehicular accident. Hobbs appeals from the trial court's order granting summary judgment to IFP, arguing that (1) genuine issues of fact remain as to whether IFP was negligent under the respondeat superior doctrine; (2) genuine issues of fact remain as to whether IFP was negligent in its hiring, retention, and supervision; (3) genuine issues of fact remain as to whether IFP negligently entrusted its vehicle to its employee; and (4) genuine issues of fact remain

on his claims for punitive damages and attorney fees. For the reasons that follow, we affirm the trial court's order granting summary judgment to IFP.

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In reviewing the denial [or grant] of a summary judgment motion, we owe no deference to the trial court's ruling and we review de novo both the evidence and the trial court's legal conclusions. Moreover, we construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion.

(Citations and punctuation omitted.) *Yim v. Carr*, 349 Ga. App. 892, 893 (1) (827 SE2d 685) (2019).

So viewed, the record shows that Ethan Hobbs is a minor child who resides with his legal guardian, Joshua William Eagle, and that Victoria Ann Eagle was Hobbs' mother.[1] At the time of the accident, Victoria Eagle was in a relationship with Jason Johnson. Also at the time of the accident, Johnson worked as a superintendent for IFP, a fire and life safety company. John Bennett served as IFP's president. In connection with Johnson's employment, IFP provided Johnson with a company

---

[1] According to the complaint, Joshua Eagle is Victoria Eagle's former husband.

2

vehicle, and it also gave him a gas card to purchase gas for the vehicle. IFP was aware that Johnson had been convicted of driving under the influence prior to working for the company.[2] According to Bennett, IFP's policy was that its vehicles were to be used for business purposes only, and he never "broke policy" for Johnson. Bennett acknowledged, however, that IFP's policy manual states that "employees may use [c]ompany vehicles for non-business purposes only with the prior approval of their manager."[3] Bennett nevertheless stressed that "[i]n no way, ever, would [he] have ever allowed [Johnson] to take [the] company vehicle and go to a bar and consume

---

[2] Johnson's driving record also revealed that he received a citation for failure to maintain a lane in connection with the 2012 DUI.

[3] The policy manual also contained the following provision:

Employees are not permitted, under any circumstances, to operate a Company vehicle, or a personal vehicle for Company business, when any impairment causes the employee to be unable to drive safely. This prohibition includes circumstances in which the employee is temporarily unable to operate a vehicle safely or legally because of illness, medication or intoxication.

Johnson signed documentation acknowledging that he received a copy of IFP's policy manual.

3

alcohol in [the] vehicle." According to Johnson, IFP allowed him to use the truck around the area where he lived without obtaining prior approval.

On June 13, 2015, at approximately 10 p.m., Johnson and Victoria left Johnson's home in IFP's vehicle and went to the 2nd Half Sports Pub & Grill for a social gathering. Denise Martin and Dawn Remington were also at the sports pub at the same time. Johnson admitted that he drank a "few" beers at the pub, and Martin and Remington had also consumed alcoholic beverages. Victoria "walked off" after an incident with another patron. Johnson got into IFP's vehicle and left the pub to search for Victoria. Around the same time, Martin and Remington also left the sports pub. As Johnson drove in search for Victoria, he spotted her walking along the roadway. Johnson exited his truck, which he left "a little bit in the road[,]" and ran across the roadway to where Victoria was walking. While driving along the same roadway, Remington came upon IFP's vehicle which she testified was parked "in the middle of the road." As Remington drove around IFP's vehicle, Martin observed Victoria "in the road" and then she heard a "noise." Martin told Remington, "I think you just hit somebody." Victoria died at the scene of the accident. Remington was indicted on driving under the influence, homicide by vehicle in the first degree, and

4

driving with an expired tag. Johnson was also indicted on involuntary manslaughter, reckless conduct, and driving under the influence.[4]

Hobbs, through his legal guardian, filed the instant action against IFP, 2nd Half Sports Pub & Grill, Johnson, and Remington alleging negligence and wrongful death against all of the defendants, and requesting punitive damages and attorney fees. Following discovery, IFP filed a motion for summary judgment, arguing that it was not vicariously liable because Johnson was not acting within the scope of his employment at the time of the accident and that it was not negligent in hiring, retaining, and supervising Johnson. IFP also argued that it did not negligently entrust its vehicle to Johnson because it had no actual knowledge that Johnson had a pattern of driving under the influence or illegally parking the company vehicle and because Johnson was not an incompetent or reckless driver. After a hearing, the trial court entered an order granting IFP's motion for summary judgment. The trial court determined that IFP was not vicariously liable on Hobbs' negligence claim because Johnson was not acting within the course and scope of his employment at the time of the accident. The trial court also determined that there was no evidence demonstrating

---

[4] Johnson later pleaded guilty to driving under the influence and reckless conduct.

5

that IFP was negligent in hiring and supervising Johnson and that IFP's awareness of Johnson's prior conviction for driving under the influence did not "qualify as actual knowledge sufficient to raise a jury question regarding dangerous propensity" for Hobbs' negligent entrustment claim. The trial court further concluded that Hobbs was not entitled to punitive damages and attorney fees because all of his substantive claims failed. This appeal followed.

1. First, Hobbs argues that the trial court erred in granting summary judgment to IFP because genuine issues of fact remain as to whether IFP was liable for Johnson's actions under the respondeat superior doctrine. We conclude that IFP is not liable under the respondeat superior doctrine, and the trial court therefore properly granted summary judgment to IFP on this claim.

"Under the doctrine of respondeat superior, an employer can be held vicariously liable for the negligence of an employee when the employee is acting within the course and scope of his employment." (Punctuation omitted.) *Yim*, supra, 349 Ga. App. 898 (1) (b).

> Two elements must be present to render a masetr liable for his servant's actions under respondeat superior: first, the servant must be in furtherance of the master's business; and second, he must be acting within the scope of his master's business. If a tort is committed by an

6

employee not by reason of the employment, but because of matters disconnected therewith, the employer is not liable. Furthermore, if a tortious act is committed not in furtherance of the employer's business, but rather for purely personal reasons disconnected from the authorized business of the mater, the master is not liable.

(Citations omitted.) *Drury v. Harris Ventures, Inc.*, 302 Ga. App. 545, 546 (1) (691 SE2d 356) (2010). Here, both Hobbs and IFP argue that Johnson was operating a vehicle at the time of the accident, and both parties therefore argue that a presumption arose that Johnson was acting within the scope of his employment at the time of the accident. It is true that

[w]here a tort occurs as a result of a vehicle collision in which the employee was driving his employer's vehicle. however, the employer's liability must be analyzed under the burden-shifting framework espoused by the Supreme Court of Georgia in *Allen Kane's Major Dodge, Inc. v. Barnes*, 243 Ga. 776 (257 SE2d 186) (1979). Under this framework, a presumption arises that the employee was acting in the course and scope of his emplyment at the time of the collision, and the burden is then on the employer to show otherwise. An employer may overcome this presumption as a matter of law by presenting uncontradicted evidence showing that the employee was not acting in the course and scope of his employment.

7

(Citation omitted.) *Dougherty Equip. Co., Inc. v. Roper*, 327 Ga. App. 434, 436 (1) (a) (757 SE2d 885) (2014). "The employer is thereafter entitled to summary judgment unless other facts are proffered[.]" (Citation omitted.) Id. If the "other facts" presented consist of direct evidence, that evidence is sufficient to present a jury question. Id. "Where the 'other facts' are circumstantial, however, such evidence will not defeat the employer's motion for summary judgment, unless it is sufficient to support a verdict in the plaintiff's favor." (Citation omitted.) Id.

Even if the presumption in Allen Kane's Major Dodge, Inc. applies, given the particular facts of this case, we conclude that the trial court did not err by ruling that IFP was not liable for Johnson's conduct. The record shows that Johnson was not working at the time of the accident but had instead left a bar after socializing with friends to search for Victoria. The evidence that Johnson was nto working at the time of the accident is sufficient to rebut the presumption that Johnson was acting within the scope of his employment at the time of the accident. See id. at 437 (1) (a) (holding that the presumption that the employee was acting within the course and scope of his employment at the time of the accident was rebutted where the employee was not working at the time of the accident).

8

Still, Hobbs argues that the record contains other evidence that is sufficient to create a fact issue to preclude a grant of summary judgment to IFP. Specifically, Hobbs points to Johnson's deposition testimony that he recieved all of the service calls for IFP and that he would send a designated technician to respond to the service request. Hobbs also points to Bennett's deposition testimony that Johnson responded to service calls after hours and that he wanted Johnson to keep a company vehicle at his home to help him respond to service calls. Although the evidence shows that Johnson was an "on-call" employee, Johnson's "'on call' status is, at best circumstantial evidence that [Johnson] was acting in the scope of employment and, therefore, insufficient to defeat [IFP]'s motion for summary judgment." (Citation omitted.) *Dougherty Equip. Co.*, supra, 327 Ga. App. at 437 (1) (a); see also *Hicks v. Heard*, 286 Ga. 864, 864-867 (692 SE2d 360) (2010) (holding that an on-call employee who had permission to drive her company's vehicle for personal and business use was not acting within the scope of employment, where the employee was driving home after an exam at her school at the time of the accident). Instead, "[t]o show that [Johnson] was acting in the scope of his employment, there must be evidence that he had, in fact, been called to duty and was acting pursuant to that duty at the time of the accident." (Citation omitted.) *Dougherty Equip. Co.*, supra, 327 Ga.

9

App. at 437 (1) (a); see also *Williams v. Baker County*, 300 Ga. App. 149, 153 (1)

(684 SE2d 321) (2009) ("The test is not that the act of the servant was done during

the existence of the employment, but whether the servant was at the time serving the

master. And this Court has repeatedly held that the mere fact than an employee was

on call does not constitute evidence that he was in the service of his employer when

the collision occurred.") (citations and punctuation omitted). Here, Hobbs did not

present any evidence which would demonstrate that Johnson had been called to duty

and was acting pursuant to that duty at the time of the accident. "In the absence of

such evidence, [IFP] could not be held vicariously liable for [Johnson]'s torts."

*Dougherty Equip. Co.*, supra, 327 Ga. App. at 437 (1) (a).

Hobbs further argues that this Court should reverse the grant of summary

judgment based upon our decision in *Allen v. Milton Martin Enterprises*, Inc., 197

Ga. App. 119 (397 SE2d 596) (1990) and *Duffee v. Rader*, 178 Ga. App. 517 (344

SE2d 258) (1986) (physical precent only). We disagree. In *Allen*, the evidence

showed that the employee was driving the employer's vehicle on his way to work at

the time of the accident. *Allen*, supra, 197 Ga. App. at 119. The evidence also showed

that the employer required the employees to drive the vehicles to its dealership during

business hours for demonstration purposes. Id. In light of this evidence, we reversed

the trial court's grant of summary judgment because "[c]learly, there was a business purpose involved in having the demonstrator vehicles on the premises during business hours." Id. In *Duffee*, we affirmed the trial court's order denying summary judgment to the employer. *Duffee*, supra, 178 Ga. App. at 519 (1). Our decision was based upon the "determinative factor" in the employer's answer to the complaint, which it later withdrew, that at all times the employee "was an agent and employee of the [employer] . . . and was engaged in the prosecution of [the employer]'s business and was acting within the scope of his authority for said corporate defendant." Id. at 518-519. Thus, we affirmed the trial court's order denying summary judgment to the employer because "the effect of the withdrawn admission by defendant was for the jury[.]" Id. at 519 (1). Here, unlike *Duffee*, IFP did not admit in its responsive pleadings that Johnson was, at all times, acting within the course and scope of hsi employment and that he was engaged in its business at the time of the accident. Additionally, unlike *Allen*, the evidence shows that Johnson had not been called to work duty and was not acting in pursuit of his work duty at the time of the accident, and Hobbs fails to point to any evidence in the record to show that IFP *required* Johnson to drive the company vehicle at any period of time. Accordingly,

11

*Allen* and *Duffee* are distinguishable from the instant case and do not compel a reversal of the trial court's grant of summary judgment to IFP on this basis.

Hobbs further asserts various arguments to support his position that genuine issues of fact remain as to whether IFP was liable for Johnson's conduct, but none of his arguments have merit. First, Hobbs argues that even if this Court were to find that Johnson deviated from his employment at the time of the accident, Johnson's deviation was a question of fact for a jury to resolve. We reject this argument because Johnson was not acting within the scope of his employment at the time of the accident.

Under Georgia law,

> if a servant or employee, while engaged in the business of his master, makes a slight deviation for ends of his own, the master remains liable when the act is so closely connected with the master's affairs that, though the servant may derive some benefit from it, it may nevertheless fairly be regarded as within the scope of his employment.

(Citation omitted.) *Coe v. Carroll & Carroll, Inc.*, 308 Ga. App. 777, 784 (2) (709 SE2d 324) (2011). Alternatively,

> if the servant steps aside or departs from his master's business, for however short a time, to perform an act entirely disconnected from his master's business and injury results from the servant's independent

voluntary act, then the servant is liable for his own tortious conduct; however, the wrong is not imputable to his master, because the servant's act was outside the scope of the master's business and not done in the prosecution of the master's business by the servant.

(Citation omitted.) *Hicks*, supra, 286 Ga. at 874-875. The Supreme Court of Georgia has extended this rule to "on-call" employees. See id. at 875 ("Public policy would be ill-served by a rule establishing 24-hour employer liability for on-call employees, regardless of the nature of the employee's activities at the time of an accident. . . . [O]n-call accessibility or availability of an employee does not transform his or her private activity into company business. the first question must always focus on scope of employment. Where the injury-producing activity is beyond that scope, no totality of other circumstances will result in respondeat superior liability.") (citation omitted).

Again, Hobbs attempts to show that Johnson was acting within the scope of his employment by pointing to evidence that Johnson was an "on call" employee, that IFP gave Johnson a company vehicle to assit him with responding to emergency service calls, and that Johnson was expected to be available for after-hours service calls. As previously stated, however, the pertinent question is whether Johnson was acting within the scope of his employment at the time of the accident, and respondeat superior liability will not lie where the activity producing the injury was beyond the

13

scope of that employment. *Hicks*, supra, 286 Ga. at 875. Under this construct, it cannot be said that Johnson's purely personal actions of leaving a bar after socializing with friends to search for his girlfriend were within the scope of his employment for IFP. See id. at 874-875 (stating that an employer would not be liable for an on call employee who deviated from the employment if the employee was not acting within the scope of the employment and in prosecution of the employer's business at the time of the injury). Therefore, because Johnson was not acting within the scope of employment and in prosecution of IFP's business at the time of the accident, Hobbs' argument is without merit.[5]

Hobbs also argues taht even if Johnson was outside the scope of his employment at the time of the accident, summary judgment was improper because issues of fact remain as to whether IFP ratified or failed to repudiate Johnson's conduct. We reject this argument because we determine that IFP did not ratify Johnson's conduct.

---

[5] For this reason, Hobbs' relaince on *Davis Gas Co. v. Powell*, 140 Ga. App. 841 (232 SE2d 258) (1976), is misplaced. In that case, the employees had been sent to a farm by their employer at the time of their deviation. Id. at 841 (1). Thus, *Davis Gas Co.* does not compel a different result in this case.

14

"An employer may ratify tortious conduct by an employee, and thereby assume liability for unauthorized conduct, but for liability to be imposed on the employer by ratification, there must be evidence that the employee's conduct was done in furtherance of the employer's business and within the scope of employment." (Citation omitted.) *Travis Pruitt & Assoc., P. C. v. Hooper*, 277 Ga. App. 1, 3-4 (1) (625 SE2d 445) (2005). See also *Medley v. Boomershine Pontiac-GMC Truck, Inc.*, 214 Ga. App. 795, 797 (4) (449 SE2d 128) (1994) ("A principal may by ratification *or* by failure to repudiate acts of his alleged agent become bound. But an act can not be subject to ratification unless done in behalf of the person adopting it and attempting to ratify it.") (citations and punctuation omitted). "[T]he long-established rule is that, where an employee was acting solely for himself there is no such thing as a master assuming, by ratification, liability for an act of another in which the master had no part." (Citation and punctuation omitted). *Travis Pruitt & Assoc., P.C.*, supra, 277 Ga. App. at 4 (1). Therefore, "where an employee is acting exclusively for himself and is not acting at all for the employer, and does not profess to be acting for the employer, there is no such thing as a master assuming by ratification liability for the personal act of his employee." (Citations omitted.) Id.

15

Hobbs attempts to establish IFP's alleged ratification of Johnson's use of the vehicle for personal reasons by pointing to evidence that IFP was aware that Johnson used the vehicle for personal use "around town," that the vehicle IFP gave to Johnson was equipped with a GPS device, and that an inspections manager was tasked with reviewing the GPS logs on IFP's vehicles. According to Hobbs, the GPS logs showed that Johnson drove IFP's truck to the sports pub on numerous occasions prior to the accident and that IFP never questioned or chastised Johnson for driving the truck to the sports bar. Thus, Hobbs contends that IFP either impliedly ratified Johnson's conduct or failed to repudiate Johnson's conduct, and it is therefore liable. It is true that "[r]atification can be either express, or implied from: (1) slight acts of confirmation by the employer; (2) silence or acquiescence of the employer; or (3) where the employer receives and holds the benefits of an unauthorized wrong." (Citations and emphasis omitted.) *Whitaker Farms, LLC v. Fitzgerald Fruit Farms*, LLC, 347 Ga. App. 381, 386 (1) (819 SE2d 666) (2018). For ratification to apply, however, we have been clear that "there must be evidence that the employee's conduct was done in furtherance of the employer's business and within the scope of employment." (Citation omitted.) *Hankerson v. Hammett*, 285 Ga. App. 610, 615 (3) (647 SE2d 319) (2007). And, as stated above, Johnson's actions of leaving a bar after

16

socializing with friends to seach for his girlfriend was not in furtherance of any

business connected to IFP, and thus IFP cannot be found to have ratified Johnson's

conduct.[6] See id. at 614-615 (3) (holding that the employee's actions of returning

from a bar which resulted in the employee being charged with a DUI, "were purely

personal and in no way performed to further [the employer]'s business, [and therefore

the employer] cannot be said to have ratified [the employee]'s actions and assumed

liability for them"). Therefore, for all of the reasons stated above, the trial court did

not err by ruling that IFP was not vicariously liable for Johnson's actions under the

respondeat superior doctrine.

2. Next, Hobbs argues that the trial court erred in granting summary judgment

to IFP on his negligent hiring, retention, and supervision claims. We conclude that

the trial court properly granted summary judgment on Hobbs' negligent hiring,

retention, and supervision claims.

(a) As to Hobbs' negligent hiring and retention claim,

---

[6] To the extent that Hobbs argues that IFP ratified Johnson's previous personal use of the vehicle and thus ratified Johnson's use of the vehicle at the time of the accident, this argument also fails. Even in IFP was aware that Johnson had previously used the vehicle for personal reasons, Hobbs fails to point to anything in the record demonstrating that IFP knew that Johnson had driven the vehicle to the sports pub at any point, or that IFP had approved of such usage of its vehicle in the past or at the time of the accident.

17

a defendant employer has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others when it is reasonably foreseeable from the employee's tendencies or propensities that the employee could cause the type of harm sustained by the plaintiff. Indeed, the employer is subject to liability only for such harm as is within the risk.

(Citations and punctuation omitted.) *Lucas v. Beckman Coulter, Inc.*, 348 Ga. App. 505, 509 (3) (823 SE2d 826) (2019). Additionally,

[f]or an employer to be liable for an automobile accident under the theory of negligent hiring and retention where, as here, the allegation os that employee had a bad driving record and where the injured [party] was merely a member of the general public on the public highway, the accident could not have occurred while the employee was simply commuting to work but had to occur while the employee was engaged in the employer's business.

(Citation omitted.) *CGL Facility Mgmt., LLC v. Wiley*, 328 Ga. App. 727, 731 (2) (a) (760 SE2d 251) (2014).

Here, Bennett testified that he was aware that Johnson had been previously convicted for driving under the influence at the time he hired Johnson. As stated above, however, the record shows that Johnson was not working or otherwise engaged in IFP's busienss at the time of the accident. Because Johnson was not

18

engaged in IFP's business at the time of the accident, IFP was also entitled to summary judgment on Hobbs' negligent hiring and retention claim. See *Centurion Indus., Inc. v. Naville-Saeger*, 352 Ga. App. 342, 347-348 (2) (834 SE2d 875) (2019) (employer entitled to summary judgment on plaintiff's negligent hiring and retention claim where, although the employee had a history of receiving various driving infractions which were known to the employer, the employee was not acting within the scope of employment at the time of the accident).

(b) As to Hobbs' negligent supervision claim, we have held that "[a]n employer may be held liable for negligent supervision only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." (Citation and punctuation omitted.) *Leo v. Waffle House, Inc.*, 298 Ga. App. 838, 841 (2) (681 SE2d 258) (2009).

> In applying this standard, the Supreme Court of Georgia has clarified that a plaintiff need not show the defendant employer knew or should have known of an employee's propensity to commit the *specific* tortious or criminal act that caused the plaintiff's injury. Rather, the plaintiff must only show that the harm [he] suffered was 'within the risk' posed by the offending employee's tendencies.

(Citations omitted.) *Little-Thomas v. Select Sepcialty Hosp.-Augusta, Inc.*, 333 Ga. App. 362, 365 (2) (773 SE2d 480) (2015).

Viewing the evidence in the light most favorable to Hobbs, the non-moving party, we conclude that no genuine issue of material fact remains on Hobbs' negligent supervision claim. Again, Hobbs relies on the fact that the GPS logs for IFP's vehicle revealed that Johnson had driven the vehicle to the sports pub on numerous occasions prior to the accident to support his negligent supervision claim. Bennett testified, however, that the GPS devices on IFP's vehicles were not used to track the usage of its trucks or to monitor the usage of the trucks, but they were instead used to assist in routing technicians to job locations. Notably, Johnson also testified at his deposition that IFP installed GPS devices on its vehicles to assist with customer complaints and disputes about the length of time a technician spent working at a particular job location. Moreover, Hobbs fails to point to any other evidence in the record to demonstrate that IFP knew or had reason to know that Johnson had been driving its vehicle to the sports pub, or that IFP should have known that Johnson had been driving its vehicle to the sports pub. Compare *Little-Thomas*, supra, 333 Ga. App. at 366-367 (2) (holding that the trial court erred in granting summary judgment on the plaintiff's negligent supervision claim arising from a sexual assault incident,

20

where the employee had previously "inappropriately touched" a patient and the hospital had knowledge of prior complaints of the employee's rude and aggressive behavior). Therefore, in the absence of evidence demonstrating that IFP knew or should have known of Johnson's tendency to drive the vehicle to the sports pub, we affirm the trial court's order granting summary judgment on Hobb's negligent supervision claim.

3. Hobbs further argues that the trial court erred in granting summary judgment to IFP on his negligent entrustment claim. We conclude that the trial court did not err in granting summary judgment on this claim.

> Under the theory of negligent entrustment, liability is predicated not on the doctrine of respondeat superior but on a negligent act of the owner in lending his vehicle to another to drive, with actual knowledge that the driver is incompetent or habitually reckless, and this negligence must occur, as a part of the proximate cause, with the negligent conduct of the driver on account of his incompetency and recklessness. A plaintiff may present circumstantial evidence that an employer has actual knowledge of an employee-driver's habitual negligence. . . . Furthermore, a plaintiff in a negligent entrustment action is not limited to showing actual knowledge of the entruster inasmuch as that plaintiff may show actual knowledge of a pattern of reckless driving or facts from which such knowledge could reasonably be inferred.

(Citations omitted.) *CGL Facility Mgmt., LLC*, supra, 328 Ga. App. at 731-732 (2)
(b).

Based on the aforementioned principles, we conclude that no genuine issues of fact remained on Hobbs' negligent entrustment claim. Here, at the time of the accident, Johnson had been previously convicted of driving under the influence, of which Bennett was aware, and Johnson had also received a citation for failure to maintain a lane on the same date as his prior arerst for driving under the influence. These facts, however, are insufficient to establish Johnson's incompetence or a *pattern* of reckless driving. See Hicks v. Heard, 297 Ga. App. 689, 691-692 (2) (678 SE2d 145) (2009) (holding that the plaintiff failed to show incompetence or a pattern of reckless driving as required for a negligent entrustment claim, where the evidence showed that two years before the accident at issue, the employee had received a speeding ticket and had also been involved in a minor traffic accident for which she received a citation for failure to yield). Although Hobbs points to evidence that Johnson drove IFP's vehicle to the sports pub on numerous occasions prior to the accident and that an inspections manager was tasked with reviewing the GPS logs on IFP's vehicles, we have been clear that it is not sufficient that a plaintiff show constructive knowledge, "i.e., that the entrustor should have known the person being

22

entrusted was not competent. The entrustor is not liable merely because he or she, by the exercise of reasonable care and diligence, could have ascertained the fact of the incompetency of the driver." (Citation omitted.) *Western Indus., Inc. v. Poole*, 280 Ga. App. 378, 381 (2) (634 SE2d 118) (2006). Hobbs fails to point to any evidence or testimony by Bennett or Johnson showing that IFP knew that Johnson had been driving IFP's vehicle to the sports pub or that Johnson had previously drove IFP's vehicle while impaired. Therefore, the record is devoid of any evidence indicating that IFP had actual knowledge of a pattern of reckless driving or facts from which such knowledge could reasonably be inferred. See *Danforth v. Bulman*, 276 Ga. App. 531, 537 (2) (623 SE2d 732) (2005) (holding that summary judgment was proper on plaintiff's negligent entrustment claim where, although the driver's mother was aware that her son had drunk excessivly at times and that her son had been previously caught by his father after drinking and driving, the plaintiff failed to show that the mother had actual knowledge that he drove while impaired by alcohol or drugs). Accordingly, the trial court did not err in granting summary judgment on Hobbs' negligent entrustment claim.

4. Lastly, Hobbs argues that the trial court erred in granting summary judgment to IFP on his punitive damages and attorney fees claims. We conclude that the trial

court properly granted summary judgment on Hobbs' punitive damages and attorney fees claims because his substantive claims fail.

"An award of attorney fees, costs, and punitive damages is derivative of a plaintiff's substantive claims." *Racette v. Bank of America, N.A.*, 318 Ga. App. 171, 181 (6) (733 SE2d 457) (2012). Thus, Hobbs

> could prevail on these claims only if [he] suceeded on an underlying substantive claim. Because, as explained in the prior divisions of this opinion, [IFP] was entitled to summary judgment on all of [Hobbs'] substantive claims, the trial court did not err in granting summary judgment to [IFP] on [Hobbs'] claims for attorney fees . . . and punitive damages.

(Citation omitted.) *Home Depot U.S.A., Inc. v. Wabash Nat. Corp.*, 314 Ga. App. 360, 374 (7) (724 SE2d 53) (2012).

In sum, while we are mindful of the tragic and unfortunate circumstances in this case, for the aforementioned reasons, we affirm the trial court's order granting summary judgment to IFP.

*Judgment affirmed. Mercier and Coomer, JJ., concur.*