45362.   ELLIOTT et al. v. LEAVITT et al.
45363.   SMITH et al. v. LEAVITT et al.
45364.   NATIONAL UNION FIRE INSURANCE COMPANY
v. LEAVITT et al.

ARGUED JUNE 2, 1970—DECIDED SEPTEMBER 24, 1970—
REHEARING DENIED OCTOBER 14, 1970—

*Harris, Russell & Watkins, Joseph H. Davis, Milton F. Gardner,* for Elliott and Smith.

*Vandiver, Barwick & Bentley, M. Cook Barwick, Gilbert B. Meredith,* for National Union.

*Dickens & Hall, G. L. Dickens, Jr.,* for appellees.

JORDAN, Presiding Judge.

I.

This portion of the opinion covers the enumerations of error by Elliott and Heiden in case 45362:

1. The trial judge instructed the jury on the provisions of § 102, Ga. L. 1953, Nov. Sess, pp. 556, 602 (*Code Ann.* § 68-1701 (a)), relating to the use of unsafe vehicles. Error is asserted on these instructions and it is argued in the brief that the only theory which the plaintiff can urge to support the instructions is that a replacement front bumper installed by the owners was one heavier that the original equipment and one which made the truck unsafe, but that the change in bumpers, however, did not create an unsafe condition as contemplated by the statute, and that the trial judge, in instructing the jury in this respect, virtually directed the jury to find that Elliott, who was driving, and Heiden, who allowed him to drive, were operating an unsafe vehicle.

The evidence discloses that the Smiths installed a bumper which was decidedly more rigid than the original equipment to protect the truck from damage in towing operations with other trucks. The plaintiff also points to the additional undisputed fact that the truck, by reason of spacers between the dual wheels in the rear, exceeded the statutory width.

Under the evidence as a whole we think it was proper to allow the jury to determine whether the vehicle was unsafe by reason of the front bumper and the spacers. To eliminate the instructions complained of as erroneous would in effect amount to a determination by this court as a matter of law that no basis whatsoever is disclosed by the evidence for the jury to consider whether in fact the truck was in an unsafe condition which had some causal connection with Leavitt's death. The instructions as given follow the statute and under the evidence as a whole cannot be regarded as inapplicable or misleading so as to constitute reversible error in respect to Elliott and Heiden.

2. The trial judge admitted in evidence three reports of blood alcohol tests conducted by the State Crime Laboratory, the reports purportedly having been made from blood taken from Leavitt, which was negative, from Elliott, disclosing a concentration of .09% ethyl alcohol, and from Heiden, disclosing a concentration of .18% ethyl alcohol. The judge instructed the jury, as requested by the plaintiff, on a portion of provisions of § 47 of the Uniform Act Regulating Traffic on Highways, as amended, Ga. L. 1968, pp. 448, 449 (*Code Ann.* § 68-1625 (a) (b) (1-5)), regarding the evidentiary presumptions arising from blood alcohol concentrations. These actions by the trial judge are separately enumerated as error, but are argued collectively.

Dr. James E. Baugh, the medical examiner for Baldwin County, testified that he had been designated by the person in charge of the State Crime Laboratory to take blood samples for the purpose of analyzing alcoholic content. After he pronounced Leavitt dead at 11:30 on the night of the collision he took a blood sample from the body, placed it in a sterile container, closed and sealed it with tape, and gave it to Deputy Sheriff Mack Hall. He received a certified report from the State Crime Laboratory purportedly based on the sample. He could not recall the name Heiden, but did recall that blood samples were taken under his supervision from two living persons by qualified technicians using the same precautions. One of the subjects was Robert Earl Elliott. He received reports from the State Crime Laboratory purportedly based on these samples.

Deputy Sheriff Mack Hall testified that he requested that Dr.

Baugh take the samples, first only from Leavitt and Heiden. He personally observed Dr. Baugh take the sample from Leavitt's body, and observed Dr. Baugh take Heiden to the laboratory at the hospital. A laboratory technician then delivered a sealed vial to him purporting to contain a sample of Heiden's blood. Elliott was located later and brought to the city police station at 12:52 a.m. from there he went with Elliott to the hospital, which they reached about 1:15 a.m. Dr. Baugh was there and authorized a laboratory technician to draw the blood. Hall observed the technician take the blood and place it in a container, which was sealed and labeled in the same manner as the other specimens. Hall personally took the three samples, packaged them in a sealed package which was addressed to Dr. Herman Jones, Director of the State Crime Laboratory, P. O. Box 1456, Atlanta, Georgia. He mailed the package at the Milledgeville post office with adequate postage for delivery in Atlanta. He identified the plaintiff's exhibits as the reports he received from the State Crime Laboratory. The exhibits themselves, certified by Larry B. Howard, Ph. D., Assistant Director, Crime Laboratory, include information thereon disclosing that the sealed samples were received "11-15-65 8:30 AM . . . by mail from D/Sheriff Mack Hall," and that the samples were analyzed by Griffin Allen, A. B., Toxicologist.

Section 47 (a, b) of the Uniform Act Regulating Traffic on Highways, in effect in 1965, Ga. L. 1953, Nov. Sess., pp. 556, 575 (former *Code Ann.* § 68-1625 (a,b)), differs in several particulars from the provisions of the 1968 amendment as given in charge. Both establish a concentration .05% or less by weight of alcohol as creating a presumption of sobriety. Under the 1953 Act a person is presumed to be under the influence of alcohol with a concentration in excess of .15%, but the 1968 Act lowers this limit to .10%. Further, in respect to provisions not given in charge, the 1968 Act (§ 47 (c), as added; Ga. L. 1968, pp. 448, 450; *Code Ann.* § 68-1625 (c)) specifically recognizes the State Crime Laboratory as the State agency authorized to approve individuals to make chemical analyses of blood, and to approve the methods used, in order for the tests to be considered valid, and (under § 47A (f); Ga. L. 1968, pp. 448, 454; *Code Ann.* § 68-1625.1 (f)) only those persons may conduct tests for blood alcohol. In implementing this 1968 statutory

authority by official regulation "a laboratory technician or aide employed as a member of the staff of the State Crime Laboratory" may be permitted to conduct the analyses. See subpar. 570-9-.02 (1) (e) (v), Rules of the Department of Public Safety, Official Compilation, Rules and Regulations of the State of Georgia, as published by the Secretary of State, November 27, 1968.

The 1953 Act, supra, in effect when these tests were made, makes no specific reference to the State Crime Laboratory, and contains no language which would lend support to the argument that the State Crime Laboratory is the controlling State agency for conducting tests for blood alcohol under the Uniform Act Regulating Traffic on the Highways. This deficiency in the 1953 Act was expressly recognized in *Pittman v. State,* 110 Ga. App. 625, 628 (139 SE2d 507) wherein this court stated: "We find no statute, however, that authorizes an official of the State Crime Laboratory to make alcohol blood tests; therefore, the exception to the hearsay rule permitting admission in evidence of records of official acts, as applied in Georgia, does not apply to reports of blood alcohol tests made by this State agency."

Another statute (§ 19, Post Mortem Examination Act, Ga. L. 1953, pp. 602, 611; *Code Ann.* § 21-219) enacted for the stated purpose, among others, "to render post mortem examination reports admissible evidence" does, however, specifically provide that "copies of . . . laboratory findings and reports in the office of the Director of the State Crime Laboratory when duly attested by said director shall be received as evidence in any court or other proceeding for any purpose for which the original could be received without any proof of the official character of the person whose name is signed thereto." Additionally, by amendment (Ga. L. 1961, pp. 437, 438; *Code Ann.* § 21-227) the State Crime Laboratory is authorized to make analyses of blood taken from a person admitted to a hospital or morgue and unable to give his consent, and to submit a certified report to the investigating officer submitting the specimen.

While this court, in *Russell v. Pitts,* 105 Ga. App. 147 (123 SE2d 708), rejected the proposition that the tests, as authorized in criminal cases under § 47, supra, as then in effect, would be inadmissible in civil cases, the precise issue of admitting a certified

copy of a test made by the State Crime Laboratory was not before the court, for the toxicologist who performed the analyses appeared as a witness, and the effort to exclude the results of the test from the evidence was based, instead, on the procedures used to obtain the blood, the fact that the toxicologist was not present when the sample was taken, and the contention that a qualified person did not obtain the sample.

In *Interstate Life &c. Ins. Co. v. Whitlock,* 112 Ga. App. 212 (144 SE2d 532), this court recognized the ruling in the *Pittman* case, supra, in respect to a determination of the lack of statutory authority of an official of the State Crime Laboratory, as restricted to the situation there involved, i.e., the provisions of the Uniform Act Regulating Traffic on the Highways as it then existed, and then determined that, under the situation then before the court, i.e., post mortem examinations, the State Crime Laboratory had authority to make blood alcohol tests (*Code Ann.* § 21-227, supra) and that statutory authority existed (*Code Ann.* § 21-219, supra) for a copy of the report to be admitted in evidence. The court then proceeded to determine the issue which the *Pittman* case avoided, i.e., that a foundation was necessary to show "the identity of the sample tested with decedent and the chain of custody to render the report admissible as relevant evidence." This court, in the *Interstate Life* case, further recognized that no rigid rule could be stated to cover every chain of custody situation.

In the present case we think the chain of custody evidence, as heretofore detailed is sufficient for all of the reports and that a certified copy of the Leavitt report, in view of the statutory provisions relating to admissibility of records of the State Crime Laboratory in respect to post-mortem examinations, is admissible. See *Code* §§ 38-601, 38-602; *Pittman v. State,* 110 Ga. App. 625, supra; Green, Georgia Law of Evidence, p. 627 et seq., § 317.

At the time of the tests, however, there was no comparable statutory authority in § 47 of the Uniform Act Regulating Traffic on Highways as it then existed and none otherwise is brought to our attention, to authorize the admission of the reports of the State Crime Laboratory in respect to blood taken from Elliott and Heiden as records of official acts (see *Pittman,* supra). Even if the statute as amended in 1968 is sufficient to remedy this lack of

authority (and we expressly refrain from so deciding) there is no basis whatsoever in the statute as amended to apply it retroactively to records of the State Crime Laboratory. See *Code* § 102-104. In *Pittman,* supra, at p. 631, it was also held that the evidentiary presumptions then in effect would be applicable only in the event of admissible evidence of tests meeting the requirements of the law then in existence under § 47 of the Uniform Act Regulating Traffic on Highways. None of the reports in the present case were admissible under this law, and, for the reasons stated above, none were admissible under the 1968 amendment as reports of official acts. We think the same reasoning applies to instructions on the statutory presumptions as changed in 1968, that is, these statutory presumptions would be applicable only for reports admissible under the 1968 statute. Thus the report on Leavitt's blood, although admissible for reasons above stated, affords no basis for use of the statutory presumptions.

It follows that the trial judge erred in giving in charge the evidentiary presumptions of the 1968 statute. In the event of another trial, if evidence of the tests is properly admitted, e.g., by a chain of custody to the toxicologist and his testimony, the meaning of the tests, in terms of intoxication or the absence of intoxication, would be a matter for expert testimony, and not in terms of the evidentiary presumptions of the 1968 statute except insofar as the expert testimony might provide the same guidelines for evaluating blood alcohol analyses.

3. It is argued that the ruling in *Craven v. Allen,* 118 Ga. App. 462 (164 SE2d 358), supports the contention that the instructions permitted the jury to apportion the verdict among the various defendants. The apportionment in *Craven* was between tortfeasors, and the holding stands for the proposition that the common-law rule against apportionment among joint and several tortfeasors is in effect in Georgia except in those cases expressly authorized by statute. The defendants here are not only the alleged tortfeasors whose liability if any, jointly or severally, is limited only by the claim and proof thereunder, but include a liability insurer providing coverage, if any, limited to $25,000, and it is apparent that the trial judge was attempting to instruct the jury to reach findings which would distinguish between the liability of the

tortfeasors and the liability of the insurer. The verdict itself reflects a clear understanding of this situation and there is no apportionment whatsoever among the tortfeasors, all of whom are found liable for the total verdict of $50,000, but the verdict does limit the liability of the insurer to the policy limits of $25,000. See § 20, CPA (*Code Ann.* § 81A-120 (a)) which adopts Federal Rule 20 verbatim. The enumerations concerning instructions to the jury in regard to apportioning the verdict are without merit for any reason argued and insisted upon.

4. Enumerations No. 12, 13, and 14 are without merit. No basis appears for sustaining a motion for mistrial because of evidence disclosing insurance coverage, this being a case involving the alleged liability of a common carrier, and the trial judge did not err in admitting in evidence a certified copy of Rule 26 of the Public Service Commission, a copy of the insurance policy issued by National Union, and the original Certificate of Public Convenience and Necessity issued to Cecil D. Smith.

5. The trial judge properly allowed the plaintiff to amend her pleadings to allege a negligent entrustment of the vehicle by the Smiths to Heiden. Whether he erred in refusing to grant a continuance to obtain rebuttal evidence to meet the purported proof of this claim is moot. See Division 8 of this opinion, infra.

II.

This portion of the opinion covers the enumerations of error by the Smiths in case 45363.

6. The first seven enumerations are argued collectively for the proposition that the evidence discloses no acts or conduct on the part of the Smiths to establish their negligence as the proximate cause or a concurring cause of Leavitt's death, or to establish liability under the principle of respondeat superior, because Heiden at the time was acting outside the scope of his employment, and Elliott was an unauthorized driver. The claim of liability based on the furnishing of an unsafe vehicle, either by reason of the substituted homemade front bumper, or because the vehicle exceeded the maximum legal width, or because of the size of the tires, if the evidence in any of these respects is sufficient to create an issue for jury determination, is operative only in the event of a fur-

ther determination that Heiden's use of the vehicle was authorized by the Smiths. See *Reddy-Waldhauer-Maffett Co. v. Spivey,* 53 Ga. App. 117, 121 (185 SE 147). When Heiden had completed his hauling for the day he was supposed to return the truck to the owners in Thomson or park it at his home. Heiden also testified that he had permission to use the truck to get something to eat at a place on the route or close to where he lived, and that the decision was up to the driver. This testimony conflicts with that in favor of the Smiths.

We think under the evidence it was proper to allow a jury to determine whether Heiden's conduct, in departing from the normal route and in allowing an unauthorized driver to operate the truck under his supervision, while proceeding from one restaurant to another for the stated purpose of obtaining food, represented a complete departure from the scope of employment and the intended use of the vehicle which would exonerate the owners from liability as a matter of law by reason of any unsafe condition of the truck having a causal connection with Leavitt's death, or by reason of any negligence of Heiden, as the Smiths' servant, to establish liability under the respondeat superior principle. Accordingly, we do not think the Smiths were entitled to a directed verdict or judgment n.o.v. on the basis of the absence of any showing of liability as a matter of law.

7. In view of the foregoing state of the evidence the trial judge did not err, as complained of in Enumeration No. 8, in instructing the jury on the meaning of a slight deviation, which, if read in context with the instructions immediately preceding, in effect authorized the jury to determine whether the conduct of Heiden, if it was the cause of Leavitt's death, was entirely disconnected with the Smiths' business, in which event Heiden, and not the Smiths, would be liable, or whether Heiden, while engaged in the Smiths' business, made only a slight deviation for purposes of his own so closely connected with the Smiths' business that although Heiden may have derived some benefit from it, his conduct could nevertheless be regarded as fairly within the scope of his employment. As noted (Divisions 6 and 11) the testimony for the Smiths and that of Heiden differ concerning the circumstances under which he could depart from his route, and the extent of permissible devia-

tion, to get something to eat. From Heiden's viewpoint it was largely a matter of discretion on the part of the driver. Instructions of this nature would have been unauthorized only in the event that the evidence demanded a finding that Heiden, as a matter of law, had completely departed from the Smiths' business in using the vehicle.

8. The fact that the Smiths, or one of them, knew that Heiden was a beer drinker, or that on occasion he may have imbibed to excess, is uncoupled with any knowledge of driving on the job or at other times while under the influence of beer, and there is an absence of any evidence to disclose that either of the Smiths knew that Heiden was not a competent person to drive or exercise custody and control of the truck. Accordingly, we think the evidence is insufficient to prove negligent entrustment as a theory of recovery against the Smiths, and the trial judge erred in instructing the jury to consider this theory of recovery, as complained of in Enumeration No. 9. See *Roebuck v. Payne,* 109 Ga. App. 525 (2, 3) (136 SE2d 399). Enumeration No. 24, complaining of the action of the trial judge in allowing the plaintiff to amend her pleadings to claim liability under this theory, or, in the alternative, to grant a continuance to rebut her purported proof of the theory, is controlled by the ruling in Division 5 of this opinion. In the event of another trial whether this theory should be submitted to a jury will depend on the evidence adduced.

9. There is no merit in enumeration No. 14, and the remaining enumerations, as argued and insisted upon, are controlled by the rulings in case 45362.

### III.

This portion of the opinion covers the enumerations of error by National Union in case 45364:

10. It being clear from the evidence that the Smiths, as partners, owned and operated the vehicle as a common carrier pursuant to a certificate issued to one of them, and that National Union had certified coverage to the Public Service Commission which had not been canceled at the time of the collision, even thought the original term of the policy had expired, and it appearing under the evidence that the Smiths could not be exonerated as

a matter of law from responsibility, we think it necessarily follows that National Union, as the liability insurer of the common carrier, was properly a party defendant, and not entitled to judgment n.o.v.

11. This leads to the proposition of whether the omnibus clause of the policy, in view of the evidence, is applicable to predicate liability of National Union on the liability of Elliott or Heiden. This clause is as follows: "III. *Definition of Insured:* The unqualified word 'insured' includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission." In respect to the clause the trial judge instructed the jury: "If you should find that, at the time of the accident, James Lee Heiden was riding in said dump truck while it was being driven with his consent by Robert Earl Elliott and that when Heiden last came into possession of said dump truck . . . he did so with the consent of . . . [the Smiths] then the use of said dump truck . . . would be with the permission of the named insured, and Heiden would be an insured under the policy. In such event, if you should also find James Lee Heiden to be liable . . . National Union would also be liable." He used the same language in respect to the liability of Elliott as establishing the liability of National Union.

Recently this court in a split decision reiterated that this broad application of the omnibus clause, liberal "first instance permission" rule, is not the law in Georgia. *Ditmyer v. American Liberty Ins. Co.,* 117 Ga. App. 512, 518 (160 SE2d 844). Under a ruling of the Supreme Court, however, the words "actual use" in the clause are not restricted specifically to the manner of operation, but refer to permission with respect to the purpose to be served. *Strickland v. Ga. Cas. &c. Co.,* 224 Ga. 487 (2) (162 SE2d 421.

It is clear that Heiden had possession of the vehicle primarily for the purpose of hauling for his masters, but under Heiden's testimony in its most favorable aspect to the plaintiff, the purpose included use of the vehicle as transportation to get something to eat. In this respect Heiden testified, "Yes sir, he said we could eat, you know, when we wanted to. Of course, I will say like he did that he didn't say in the middle of the night which is natural you

wouldn't; but, if the cafe was within the route or were close to where you live, it would be fine. It was up to the driver. He never actually told any separate one." Even if Elliott was an unauthorized driver who was being allowed by Heiden to drive for practice, this purpose was in addition to the purpose of providing transportation to Heiden, as an employee of the Smiths, from one eating place to another, to get something to eat, before he finished using the truck on the day in question.

In *Cotton States Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 118 Ga. App. 451, 454 (164 SE2d 262) this court, in applying the ruling in *Strickland,* supra, determined that the omnibus clause provided coverage because the evidence disclosed "that the vehicle was being used for that purpose [duties of the passenger as a servant of the owner], though it was being operated by one [the servant's son] without express permission, and probably without implied permission to drive it."

In view of the above the instructions as given were erroneous, although a valid basis appears under the evidence for application of the omnibus clause, under appropriate instructions, to Elliott and Heiden.

12. The remaining enumerations, as argued and insisted upon, are controlled by the rulings in cases 45362 and 45363.

IV.

For the reasons heretofore stated the trial judge erred in refusing to grant a new trial in respect to all of the defendants.

*Judgment reversed. Eberhardt and Pannell, JJ., concur.*