## A02A0733. ENVIROMEDIATION SERVICES, LLC v. BOATWRIGHT et al.
### (568 SE2d 117)

POPE, Presiding Judge.

After a jury trial which resulted in a $1 million verdict against it, Enviromediation Services, LLC appeals. For the following reasons, we affirm.

This case arose on June 22, 1998, when Alonzo Harris drove a dump truck across the centerline of Highway 140 in Cherokee County and collided with several vehicles. The collision caused the deaths of John Gordon Boatwright, Misty Dawn Boatwright, and Terri Ann Lamanac. Several other people were injured in the accident, including John Gordon Boatwright, Jr. and James Roy Gordon Boatwright. Following the accident, Harris fled the scene and was apprehended a short distance down the road.

Based on the accident, Ruth Lillian Boatwright, individually and on behalf of the estate of John Gordon Boatwright, Sr., and four other plaintiffs sued Harris, Prince Construction Company, and Envirome-

diation Services.[1] Plaintiffs later amended their complaint to include GBI Construction Company as a defendant.

The following facts concerning the accident were undisputed at trial. The parties agreed that on the date of the accident, Harris' immediate employer was Prince Construction Company. Harris had reported for work to Prince Construction Company's place of business on the morning of the accident, and David Prince, one of Prince Construction Company's employees, told Harris to report to a job site at Cherokee County High School, which was undergoing renovations. Harris went to the site; he was hauling a load of debris away from the construction site immediately before the accident. Sandra Prince d/b/a Prince Construction Company admitted that Harris was one of its regular employees at the time of the wreck, and that she was liable for his negligence.

It was also undisputed at trial that GBI Construction Company was the general contractor for the renovation of Cherokee County High School. Enviromediation was a subcontractor for the demolition and asbestos removal on that project. Enviromediation had hired Prince Construction Company to help with debris removal. The general contract for GBI's construction project and the Enviromediation subcontract were admitted as exhibits at trial.

At trial the parties specifically stipulated to Harris' and Prince's liability. The court instructed the jury that the only question for resolution at trial was whether GBI or Enviromediation, or both, was liable to the plaintiffs.

After hearing the evidence, the jury returned a verdict finding that only Enviromediation was liable. Accordingly, judgment against Enviromediation was entered for $1 million. Here, Enviromediation appeals, raising two enumerations of error.

In both enumerations of error, Enviromediation argues that the trial court erred in denying its motion for a directed verdict at the conclusion of the plaintiffs' case and again at the conclusion of all of the evidence, because Harris was not its employee or agent at the time of the accident. Enviromediation contends that for the jury to impose liability, it was necessary that Harris have been under its immediate direction and control and that the evidence was uncontradicted that after Harris left the Cherokee County High School job site, it did not exercise control over him. In support of its argument that there was no basis for its liability, Enviromediation details vari-

---

[1] The other plaintiffs were John Gordon Boatwright, Jr., a minor, by and through his mother and guardian Ruth Lillian Boatwright; James Roy Gordon Boatwright, a minor, by and through the guardian of his property, Kimberly Prance Hamrick; Kimberly Prance Hamrick, on behalf of the estate of Misty Dawn Boatwright, deceased; and Jackie Wayne Lamanac, individually and as administrator of the estate of Terri Ann Lamanac, deceased.

ous testimony which it contends showed that it did not have the requisite control over Harris.

In response, plaintiffs argue that there was a question of material fact as to whether Harris was an agent both of Enviromediation and of Prince. They cite testimony which they say established that Enviromediation directed and controlled various aspects of Harris' work, making him an agent of both companies.

There was ample evidence at trial regarding the respective responsibilities of Enviromediation and of GBI. William Prince, an overseer at Prince Construction Company, testified that Tom Smith of Enviromediation called him on Friday and requested that Prince Construction Company supply three trucks for the project at Cherokee County High School the next Monday. Prince Construction Company, which had previously had minimal dealings with Enviromediation, was to be paid $65 per hour per truck. After receiving this money, Prince would then pay its drivers for their work. There was no written contract between Enviromediation and Prince.

As agreed to by Enviromediation and Prince, the Prince drivers reported to Cherokee County High School at 7:30 a.m. on June 22, 1998. They reported to Enviromediation's supervisor Smith, who then instructed them about which debris — concrete, metal, wood — to load into which truck and how to back their trucks into the loading area. Smith decided how heavily the trucks were to be loaded and then required the drivers to put a tarp on their loads because of a GBI requirement. Enviromediation decided that the debris would be taken to the Chadwick Road landfill, and Smith gave the drivers the directions as to the particular route to take. Smith also instructed the drivers to use the Enviromediation account at the landfill. After the driver dumped each load of debris, he was given a "load ticket"; these tickets were delivered to Enviromediation at the end of the day.

There was testimony that if Smith did not like the way the Prince drivers were doing something, Smith had the right to send them home. Nonetheless, Prince retained the ultimate decision as to whether to keep or fire a driver.

Chris Scott, one of the three drivers Prince sent to Cherokee County High School on the accident date, also testified at trial. He stated that he reported to Smith on that date and was told to take his load to Chadwick Road landfill where he got a dump ticket, charging the load to Enviromediation's account. This ticket was to be turned in to Smith at the end of the day. Scott testified that Smith and another Prince driver had an argument that day about how the other driver was loading his truck. Scott testified that Smith told the other Prince driver that he would get that driver fired. When Smith was asked about this argument, he stated that the argument concerned the driver's maneuvering the truck and that Smith told the driver to

back in straighter or he "was going to cut him off and send him home."

Harris also testified at trial. He stated that Smith gave him directions to the Chadwick Road landfill and that Harris picked up the dump tickets for the loads. Harris testified that the collision occurred on his fourth trip to the landfill that day. Harris stated that once he left the job site, Smith did not give him further instructions.

Based on the evidence presented at trial, we conclude that the trial court did not err in denying Enviromediation's motion for directed verdict. In *Slater v. Canal Wood Corp. &c.*, 178 Ga. App. 877, 878 (1) (345 SE2d 71) (1986), this court enunciated considerations which are determinative to our present inquiry:

> The chief test to be applied in determining whether a person is employed as a servant or as an independent contractor has long been and continues to be whether the contract gives, or the employer assumes, the right to control the time, manner, and method of the performance of the work, as distinguished from the right merely to require certain definite results in conformity with the contract. . . . The Restatement, Second, Torts § 414 states the rule thusly: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." See OCGA § 51-2-5 (5). Although the relationship between an alleged master and servant is generally a question of fact to be decided by a jury, there are cases presenting factual situations wherein this issue has been decided as a matter of law.

(Citations and punctuation omitted.) See also *Yow v. Fed. Paper Bd. Co.*, 216 Ga. App. 652, 654 (2) (455 SE2d 372) (1995).

OCGA § 51-2-4 provides that an employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer. Some exceptions to this rule are laid out in OCGA § 51-2-5, subsection (5) of which provides that an employer is liable for the negligence of a contractor: "[i]f the employer retains the right to direct or control the time and manner of executing the work or interferes and assumes control so as to create the relation of master and servant or so that an injury results which is traceable to his interference."

Because Prince's liability was stipulated to, the issue of whether

Prince was also an agent for GBI and/or Enviromediation presented the question of whether Harris was an agent for both companies. Thus, the trial court instructed the jury that "a person may be an agent or employee of more than one employer." See generally *Reliance Ins. Co. v. Bridges*, 168 Ga. App. 874, 876 (1) (311 SE2d 193) (1983). In this case the test regarding whether both employers were liable involved the question of GBI's and Enviromediation's control over Harris. See, e.g., *Hotel Storage v. Fesler*, 120 Ga. App. 672, 675 (2) (172 SE2d 174) (1969) (although "one ordinarily cannot be the servant of both a general master and a temporary master, it may be found that there was a dual agency and that the employee in question was the servant of both the general and the special employer because the purpose and business of each [were] being furthered and each had some control over the activity which occasioned the injury") (punctuation omitted).

Here, there was evidence that Enviromediation exercised sufficient control of the manner, method, and means of the execution of Harris' work to create a jury issue regarding its liability. See, e.g., *Davis v. Beasley Timber Co.*, 241 Ga. App. 706, 708 (1) (527 SE2d 221) (1999); compare *Jacobs v. Thomson Oak Flooring*, 250 Ga. App. 56, 57 (1) (550 SE2d 465) (2001). There was evidence that Enviromediation controlled the manner in which the drivers loaded their trucks to carry the loads to the landfill; it decided which landfill to use and specifically directed Prince's employees to the landfill; it controlled the logistics of the load tickets for each trip the driver made to the landfill; and it decided whether a particular driver could participate in the job or not. There was also evidence that Enviromediation had sole control over the materials to be loaded in Harris' truck; that Enviromediation directed how the Prince employees backed into the loading area; and that Enviromediation decided how heavily each truck was to be loaded and made sure that the drivers "tarped" their loads. Moreover, after each load of debris was dumped at the landfill, the "load tickets" were delivered to Enviromediation. This evidence indicated that there was at least a factual issue regarding whether Harris was an agent of Enviromediation at the time of the accident, and the trial court did not err in denying its motions for directed verdict.

*Judgment affirmed. Ruffin and Barnes, JJ., concur.*

DECIDED JUNE 27, 2002 —

*Lokey & Smith, Malcolm Smith, Kevin A. Doyle, Carlock, Copeland, Semler & Stair, Dennis G. Lovell, Jr.*, for appellant.

*Gambrell & Stolz, Irwin W. Stolz, Jr., Linda A. Klein, Gene F. Cantrell, Thomas W. Malone, Stuart B. Houck*, for appellees.