A10A1717. COE v. CARROLL & CARROLL, INC.
A10A2338. COE v. GRIFFIN CONTRACTING, INC.
(709 SE2d 324)

ELLINGTON, Chief Judge.

This personal injury action, pending in the State Court of Chatham County, arose from a vehicular accident in which Christopher Coe ("Coe") crashed his car into a tractor-trailer that Melvin Williams had parked on the side of the road. Following Coe's death, the action is now being prosecuted by his widow, Kathleen Coe, against Williams, Griffin Contracting, Inc. ("Griffin"), and Carroll & Carroll, Inc. ("Carroll"). Kathleen Coe appeals a number of interlocutory orders that are adverse to her, and we have consolidated these cases for decision.

The primary issue is whether either Griffin (which employed Williams as a truck driver) or Carroll (a contractor that hired the tractor-trailer and driver from Griffin) can be held derivatively liable for Williams' alleged negligence in parking the tractor-trailer with its back end protruding into the roadway. The trial court concluded that neither Griffin nor Carroll can be held liable for Williams' alleged negligence and, therefore, granted their motions for summary judgment, leaving the case pending against Williams only. In ruling on Carroll's motion for summary judgment, the trial court concluded that, as a matter of law, Williams was not Carroll's borrowed servant at the time of his alleged negligence and that, therefore, Carroll cannot be held liable for Williams' conduct. In ruling on Griffin's motion for summary judgment, the trial court concluded that, by detouring 2.5 miles away from his route in order to pick up lunch, Williams was, as a matter of law, on a purely personal mission at the time of his alleged negligence and was not acting in the scope of his employment with Griffin or furthering Griffin's business and that, therefore, Griffin cannot be held liable under the doctrine of respondeat superior. And, based on its conclusion that Williams' alleged negligence was not committed within the scope of his employment with Griffin, the trial court granted Griffin's motion for summary judgment on Kathleen Coe's remaining claim against Griffin, for negligent hiring and retention.

In addition, the trial court overruled in part Kathleen Coe's objections to certain medical testimony and denied her motion in

limine to exclude evidence of Coe's past drug use and the methadone drug therapy he was receiving at the time of the accident.

In Case No. A10A1717, Kathleen Coe appeals from the grant of summary judgment in favor of Carroll. In Case No. A10A2338, she appeals from the grant of summary judgment in favor of Griffin and from the evidentiary rulings. For the reasons explained below, we affirm in part and reverse in part.

*Case No. A10A1717*

1. In order to prevail on a motion for summary judgment under OCGA § 9-11-56,

> the moving party must show that there exists no genuine issue of material fact, and that the undisputed facts, viewed in the light most favorable to the nonmoving party, demand judgment as a matter of law. Moreover, on appeal from the denial or grant of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citations omitted.) *Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006).

Viewed in the light most favorable to the appellant, the record shows the following. In June 2006, Carroll was building a section of Highway 17 in Chatham County under contract with the Georgia Department of Transportation. Carroll in turn hired Griffin to supply, at an hourly rate, a tractor, with a trash trailer, and a driver to haul away debris that was generated by the project. There was no written contract between Carroll and Griffin. Griffin's owner assigned Williams to the job. Although Carroll lacked the authority to terminate Williams from his employment with Griffin, it had the authority to tell Griffin to send a different driver in place of Williams.

No one from Griffin directly supervised Williams while he was hauling debris for Carroll. Instead, Carroll's foreman dictated what time Griffin's driver and tractor-trailer should arrive at the job site and directed Williams in terms of when to take a particular load to a landfill, where to take each load (to which landfill), whether and when to take a break, and when to cease work for the day.

On June 30, 2006, Williams hauled a load of debris from the Carroll job site to the landfill, dumped the load, and then stopped at

a church to pick up a boxed lunch he had ordered; he planned to eat lunch in his truck while he went back to the job site. According to Williams, he was "on the clock" at the time he parked Griffin's tractor-trailer at the church. Williams deposed that Griffin's tractor-trailer drivers, including himself, were not given time to take a break to stop and eat lunch. Instead, they would "steady roll," by getting take out and eating on the road or back at the job site. Griffin later paid Williams for all the hours he worked that day, without deducting any break time, and Griffin billed, and received payment from, Carroll for all of that time.

At 12:50 p.m., within seconds after Williams parked the tractor-trailer on the side of the road in front of the church, Coe crashed into the rear of the tractor-trailer, which protruded two feet, seven inches into the roadway, and he sustained serious injuries.

In pursuing a claim against Carroll for Williams' alleged negligence, the appellant contends that, at the time of his alleged negligence, Williams acted as an agent of both Carroll and his employer, Griffin.

Because Carroll hired the use of Griffin's tractor-trailer and driver, the determination of whether Carroll was vicariously liable for Williams' negligence is controlled in part by Georgia's laws governing bailments.[1] OCGA § 44-12-62 (b) provides that "[i]f [a] bailor sends his own agents with the thing bailed, the hirer shall not be liable for the acts of such agents but shall only be liable either to the bailor or to third persons for the consequences of his own directions and for gross neglect." It is undisputed in this case that the bailor (Griffin) sent its own agent (Williams) with the thing bailed (the tractor with attached trash trailer). Thus, under OCGA § 44-12-62 (b), Carroll, as the hirer, is liable only for "the consequences of [its] own directions or for [its] gross negl[igence]." As the Supreme Court of Georgia has explained, "[t]he [statute's] reference

---

[1] See OCGA §§ 44-12-40 ("A bailment is a delivery of goods or property upon a contract, express or implied, to carry out the execution of a special object beneficial either to the bailor or bailee or both and to dispose of the property in conformity with the purpose of the trust."); 44-12-60 ("The term 'hiring' means a contract by which one person grants to another either the enjoyment of a thing or the use of the labor and industry of himself during a certain time and for a stipulated compensation or by which one person contracts for the labor or services of another person with regard to a thing bailed to such other person for a specified purpose."); see also OCGA § 51-2-5 (5) (An employer is liable for the negligence of a contractor "[i]f the employer retains the right to direct or control the time and manner of executing the work or interferes and assumes control so as to create the relation of master and servant or so that an injury results which is traceable to his interference[.]"); Restatement (Second) Torts, § 414 (1965, update April 2010) ("One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.").

to the hirer's 'own directions' . . . refers to the borrowed servant doctrine." *Tim's Crane & Rigging v. Gibson*, 278 Ga. 796, 797 (604 SE2d 763) (2004). In the case of a bailment, such as in the case at bar, an employee of the bailor is a borrowed servant of the hirer (1) if the hirer "had complete control and direction of the [bailor's employee] for the occasion," whereas the bailor had no such control, and (2) if the hirer "had the exclusive right to discharge the [bailor's employee]." (Citation and punctuation omitted.) Id. Conversely, where there is a rental of a motor vehicle together with a driver, the driver is not a borrowed servant of the hirer if the hirer has no supervision or control of the driver's operation of the vehicle and has "no right to discharge the driver and take over the operation of the vehicle himself or put it in the hands of another to operate[.]" (Citation and punctuation omitted.) *Montgomery Trucking Co. v. Black*, 231 Ga. 211, 213 (200 SE2d 882) (1973). Under such circumstances, "the owner of the vehicle who employs the driver[ (that is, the bailor)], rather than the hirer, is responsible for the driver's negligence." (Citation and punctuation omitted.) Id.

With regard to the first factor, that is, the control and direction of the employee, Georgia courts have held that a bailor's employee is a borrowed servant of the hirer as a matter of law where an express contract between the hirer and the bailor "explicitly sets forth each requirement of the borrowed servant doctrine[,]" that is, where the contract grants the hirer the right to control the manner, method, and means of the employee's execution of the work and the right to terminate the employee from the hirer's job. (Citations and punctuation omitted.) *Tim's Crane & Rigging v. Gibson*, 278 Ga. at 798. In such a case, the hirer accepts the status of an employer for the duration of the contract. Id.[2] A bailor's employee is not a borrowed servant of the hirer as a matter of law, on the other hand, where, by an express contract between the hirer and the bailor, the bailor

---

[2] In *Tim's Crane & Rigging v. Gibson*, the agreement between the hirer and the bailor provided, inter alia, that the equipment and the bailor's employees while operating the equipment were "under the [hirer's] exclusive jurisdiction, supervision and control[,]" that the hirer had the duty of giving "specific instructions and directions to all persons operating the leased equipment[,]" that the hirer had "the right to control and [was] deemed to have exercised that right as to all details or operation of the equipment and personnel furnished[,]" that the hirer acknowledged that the bailor "complete[ly] surrender[ed]" control of its personnel and equipment, and that "no personnel [would] be replaced or substituted by [the bailor] except at the direction of and with the approval of [the hirer]." (Punctuation omitted.) *Gibson v. Tim's Crane & Rigging*, 266 Ga. App. 42, 43 (596 SE2d 215) (2004). See also *Montgomery Trucking Co. v. Black*, 231 Ga. at 213-214 (A truck driver was not a borrowed servant of the hirer, a trucking company, as a matter of law, where the written contract between the contractor, who owned the truck and employed the driver, and the trucking company provided that the leased equipment was under "the complete control and direction" of the contractor and not of the trucking company.).

acknowledges that it retains control of its employee and the hirer "waive[s] or renounce[s]" responsibility for the negligence of the bailer's employee. (Citation omitted.) Id. Because "the contract between the parties is controlling as to their responsibilities thereunder," where an express contract establishes that a bailor's employee is, or is not, the hirer's borrowed servant, the amount of control actually exercised by the hirer or by the bailor over the bailor's employee is not in issue and summary judgment will often be appropriate. *Montgomery Trucking Co. v. Black*, 231 Ga. at 213.

In cases where each requirement of the borrowed servant doctrine is not explicitly set forth in an express contract, however, such as the instant case, the relationship between the hirer and the bailor's employee is generally a question of fact to be decided by a jury. *Enviromediation Svcs. v. Boatwright*, 256 Ga. App. 200, 203 (568 SE2d 117) (2002).[3] In *Enviromediation Svcs. v. Boatwright*, the bailor (a construction company) supplied dump trucks and drivers, one of whom injured the plaintiff, to the hirer (the general contractor of a high school renovation) to remove debris from the job site. Id. at 201. There was evidence that the hirer's supervisor controlled how the drivers supplied by the bailor were to back their trucks into the loading area; which type of debris to load into which truck; how heavily to load the trucks; how to secure the loads; which landfill to use to dump the loads; which route to take to the landfill; and how to document each load dumped. Id. at 202-204. In addition, there was evidence that the hirer decided whether or not a particular driver could participate in the job. Id. We held that the trial court correctly concluded that the evidence presented at least a factual issue regarding whether the driver who caused the plaintiff's injuries was a borrowed servant of the hirer. Id. at 204.

In this case, there was evidence that Carroll alone supervised Williams' work hauling debris, that it controlled his schedule for each day, including whether he could take a lunch break, and that it dictated which landfill would receive the debris and when a load was ready. This evidence presented at least a factual issue regarding whether Williams was Carroll's borrowed servant, and, therefore, the trial court erred in concluding that Carroll was entitled to summary judgment on the basis that Williams was not Carroll's

---

[3] Cf. *Six Flags Over Ga. v. Hill*, 247 Ga. 375, 377-378 (1) (276 SE2d 572) (1981) (Where a defendant claimed that it was an injured worker's employer, and therefore the employee's exclusive remedy was under the Workers' Compensation Act, the defendant was entitled to judgment as a matter of law where the undisputed evidence showed that it, and not the worker's direct employer, had complete supervision over the worker and complete control over how the work was done on the occasion when the injury occurred.).

borrowed servant at the time of his alleged negligence.[4] See Division 2, infra.

### Case No. A10A2338

2. The appellant contends that there is evidence from which a jury could find that Williams was acting in the scope of his employment with Griffin and furthering its business at the time of his alleged negligence, as required for liability to attach under the doctrine of respondeat superior. As a result, the appellant contends, the trial court erred in granting Griffin's motion for summary judgment on her claims based on Williams' negligence.

Under OCGA § 51-2-2, a master "shall be liable for torts committed by [the master's] servant by [the master's] command or in the prosecution and within the scope of [the master's] business, whether the same are committed by negligence or voluntarily." Under the doctrine of respondeat superior, a master is liable for injuries caused to another by the master's servant if at the time of the injury the servant was acting within the scope of his or her employment and in furtherance of the master's business. *Piedmont Hosp. v. Palladino*, 276 Ga. 612, 613-614 (580 SE2d 215) (2003); *Allen Kane's Major Dodge v. Barnes*, 243 Ga. 776, 777 (257 SE2d 186) (1979).

> Where a vehicle is involved in a collision, and it is shown that the [vehicle] is owned by a person, and that the operator of the vehicle is in the employment of that person, a presumption arises that the employee was in the scope of his employment at the time of the collision, and the burden is then on the defendant employer to show otherwise. This

---

[4] *Flowers v. U.S.S. Agri-Chemicals*, 139 Ga. App. 430 (228 SE2d 392) (1976), which Judge Andrews quotes in his dissenting opinion, does not require a different result. In that case, a manufacturer had agreements with many contract haulers that authorized them to haul loads of the manufacturer's products on a first-come, first-served basis. Id. We concluded that the evidence established as a matter of law that the manufacturer did not have complete control over and direction of the defendant hauler's driver, because the driver alone decided, inter alia, what days and times he would pick up a load of the hirer's products and when he would make deliveries. Id. at 431. In this case, Williams had no such discretion. Nor does *Montgomery Trucking Co. v. Black*, also cited by Judge Andrews, require a different result. In that case, a written contract expressly provided that the bailor "understands and agrees that the equipment that is the subject of this lease, . . . during the term of the lease, is under the complete control and direction of [the bailor], and not the [hirer]." (Punctuation omitted.) 231 Ga. at 212. Thus, *Montgomery Trucking Co. v. Black* is distinguished from this case, in which there is *not* an express contract in which the parties provided that the bailor's employee was, or was not, the hirer's borrowed servant during the bailment. As we have explained, controlling precedents and the record in this case require that the relationship between Carroll and Williams be decided by a jury. *Enviromediation Svcs. v. Boatwright*, 256 Ga. App. at 203-204.

must be done by clear, positive and uncontradicted evidence.

(Citations and punctuation omitted.) *Allen Kane's Major Dodge v. Barnes*, 243 Ga. at 777. A defendant who moves for summary judgment may overcome the presumption with the "uncontradicted testimony of the defendant and/or the employee . . . that the employee was not acting within the scope of his employment" at the time of the collision. (Citations and punctuation omitted.) *Hicks v. Heard*, 297 Ga. App. 689, 690 (1) (678 SE2d 145) (2009). If the defendant overcomes the presumption, the burden shifts back to the plaintiff to show,

> in addition to the facts which give rise to the presumption that he was in the course of his employment, some other fact which indicates the employee was acting within the scope of his employment. If this "other fact" is *direct* evidence, that is sufficient for the case to go to a jury. However, when the "other fact" is *circumstantial* evidence, it must be evidence sufficient to support a verdict in order to withstand the defendant's motion for summary judgment.

(Citations and punctuation omitted; emphasis in original.) Id.

"[I]f a servant steps aside from his master's business to do an act entirely disconnected from it" or commits a tortious act "for purely personal reasons disconnected from the authorized business of the master," the servant is not acting in the scope of his or her employment and in the furtherance of the master's business. (Punctuation, footnotes and emphasis omitted.) *Piedmont Hosp. v. Palladino*, 276 Ga. at 613-614; see also *Elliott v. Leavitt*, 122 Ga. App. 622, 630 (6) (178 SE2d 268) (1970) (An employee's complete departure from the scope of employment and the intended use of a company vehicle will exonerate the owners from liability as a matter of law.). "Georgia courts have consistently held that [when] an employee takes a break for lunch and is not otherwise engaged in his employer's business, the employee is on a purely personal mission[,]" such that the employer cannot be held liable for injuries resulting from the employee's negligent driving while on a personal mission. (Footnote omitted.) *Gassaway v. Precon Corp.*, 280 Ga. App. 351, 353 (634 SE2d 153) (2006); see also *Nelson v. Silver Dollar City*, 249 Ga. App. 139, 145 (4) (547 SE2d 630) (2001) (The fact that an hourly employee was paid during her lunch break did not change her personal mission of procuring lunch into a mission on behalf of the employer.).

It is equally well settled, however, that

> if a servant or employee, while engaged in the business of his master, makes a slight deviation for ends of his own, the master remains liable when the act is so closely connected with the master's affairs that, though the servant may derive some benefit from it, it may nevertheless fairly be regarded as within the scope of his employment. Where there is a deviation[,] the question should ordinarily be submitted to the jury as to whether or not the deviation from the master's business was slight, so slight as not to affect the master's responsibility for the negligent act.

(Citations and punctuation omitted.) *Davis Gas Co. v. Powell*, 140 Ga. App. 841, 844 (1) (232 SE2d 258) (1976).[5] It follows that, if an

---

[5] See *Bunch v. McLeskey*, 173 Ga. 545, 548 (161 SE 128) (1931) (There was a jury issue regarding whether a driver was acting within the scope of his employment at the time of a collision where there was evidence that, after completing the employer's business in another town, the driver drove about one mile out of the way and in the wrong direction instead of immediately returning to his place of employment.); *Gordy Constr. Co. v. Stewart*, 216 Ga. App. 882, 883-884 (456 SE2d 245) (1995) (There was a jury issue regarding whether an employee was acting within the scope of his employment at the time of a collision where there was evidence that the employee was living in a motel far away from his permanent residence with only the company truck as transportation, which gave rise to a reasonable inference that the employer knew the employee would use the truck for personal errands, including driving to and from some meals.); *Intl. Business Machines v. Bozardt*, 156 Ga. App. 794, 796-799 (275 SE2d 376) (1980) (There was a jury issue regarding whether an employee was acting within the scope of his employment at the time of a collision where there was evidence that the employee was lodging out of town while attending a business convention and that the employer knew that the employee would drive an expensed rental car to and from meals.); *Elliott v. Leavitt*, 122 Ga. App. at 629-630 (6) (There was a jury issue regarding whether a dump truck driver was acting within the scope of his employment at the time of a collision where there was evidence that he had permission to use the employer's truck at the end of the work day to get something to eat at a place on the route or close to where he lived and to park the truck at his home and where he was driving the truck to go to a restaurant with a friend when the collision occurred.); *Parker v. Smith*, 66 Ga. App. 567 (18 SE2d 559) (1942) (There was a jury issue regarding whether an employee was acting within the scope of his employment at the time of a collision where there was evidence that, while en route to picking up equipment for the employer, the employee detoured a few blocks to his home, intending to pick up a suit he wanted to have pressed.); *Dawson Motor Co. v. Petty*, 53 Ga. App. 746, 749-750 (186 SE 877) (1936) (There was a jury issue regarding whether an automobile salesman was acting within the scope of his employment at the time of a collision where there was evidence that he used a company demonstration car to take acquaintances who might be potential customers to a social event.); *Davies v. Hearn*, 45 Ga. App. 276, 277-281 (164 SE 273) (1932) (There was a jury issue regarding whether a truck driver was acting within the scope of his employment at the time of a collision where there was evidence that he had permission to drive the employer's truck home because it allowed the employee, who used the truck to pick up a load of lumber for the employer each morning, to start work earlier and because it saved mileage on the truck.); *Limerick v. Roberts*, 32 Ga. App. 755 (124 SE 806) (1924) (The trial court correctly charged the jury that "if a servant or employee, while engaged in the business of his master, makes a slight deviation for ends of his own, the master remains liable when the act was so closely connected with the master's affairs that, though the servant may derive some benefit from it, it may

employee, who is driving to or from a destination while acting within the scope of his employment and in furtherance of the employer's business, detours slightly from the direct or customary route to that destination to get a meal, and if there is evidence that it serves the employer's interests for the employee to make the slight detour for that purpose, a jury issue exists regarding whether the employee is acting within the scope of his employment during the brief detour. In this case, it is undisputed that, at the time of Williams' alleged negligence, he was driving Griffin's vehicle from a landfill to Carroll's job site when he detoured to the church to pick up his lunch. Further, there is evidence that Williams' act of driving the tractor-trailer from the landfill to Carroll's job site furthered Griffin's business, including evidence that Carroll paid Griffin for the use of the tractor-trailer and driver. Finally, there is evidence that it served Griffin's interest for Williams to get his lunch en route and eat while driving because it allowed him to return more quickly to the job site.[6] In light of the evidence, the question of whether Williams' deviation from Griffin's business was so slight and so closely connected with Griffin's affairs that it can be held vicariously liable for his alleged negligence must be resolved by a jury, and the trial court erred in granting Griffin's motion for summary judgment. *Davis Gas Co. v. Powell*, 140 Ga. App. at 844 (1); *Parker v. Smith*, 66 Ga. App. 567, 568-570 (1) (18 SE2d 559) (1942).[7]

3. The appellant contends that Griffin knew, or should have known, that Williams was incompetent to drive a tractor-trailer based on his driving record and based on the suspension of his license for failure to pay child support after he began working for Griffin. The record shows that Williams, who obtained his commercial driver's license in 1992, received a citation in 2003 for driving with an expired tag and received a citation for speeding (less than ten miles per hour over the speed limit) in 2004 and another speeding ticket in 2005. It follows, the appellant contends, that the trial court erred in granting Griffin's motion for summary judgment on her negligent hiring and retention claim.

---

nevertheless fairly be regarded as within the course of his employment.") (citations and punctuation omitted).

[6] See also Division 1, supra, in which we hold that there is a jury issue regarding whether, at the time of his alleged negligence, Williams acted as the borrowed servant of Carroll and not as the servant of Griffin.

[7] Cf. *Upshaw v. Roberts Timber Co.*, 266 Ga. App. 135, 136-137 (1) (596 SE2d 679) (2004) (An employer was not liable as a matter of law for its employee's negligent driving which occurred during a trip unrelated to the employee's employment to visit relatives.); *Reese v. Ga. Power Co.*, 191 Ga. App. 125, 128-129 (3) (381 SE2d 110) (1989) (An employer was not liable as a matter of law for its employee's negligent driving which occurred during the employee's unpaid lunch hour, when the employee was returning to his job site after having had lunch, and when the employee was driving a company-owned vehicle that he had no authority to drive.).

OCGA § 34-7-20 provides that an employer "is bound to exercise ordinary care in the selection of employees and not to retain them after knowledge of incompetency[.]"

> The appropriate standard of care in a negligent hiring/retention action is whether the employer knew or should have known the employee was not suited for the particular employment. In accordance with this standard, this Court has granted summary judgment to employers when there is no evidence that the employer knew of violations on the employee's driving record or ignored its own reasonable policy of investigating such records, and denied summary judgment when there is evidence that the employer knew of violations on the employee's record.

(Punctuation, footnotes and emphasis omitted.) *Western Indus. v. Poole*, 280 Ga. App. 378, 381-382 (3) (634 SE2d 118) (2006); see also *Munroe v. Universal Health Svcs.*, 277 Ga. 861, 863 (1) (596 SE2d 604) (2004) ("[A] defendant employer has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's tendencies or propensities that the employee could cause the type of harm sustained by the plaintiff.") (citations and punctuation omitted).

In *Western Indus. v. Poole*, the allegedly negligent driver's employer argued that the violation on its employee's driving record, which was for misdemeanor hit-and-run, failed to show a tendency or propensity to drive in a dangerous fashion and, therefore, that the violation could not establish the essential causal connection between the employee's particular incompetency for the job and the injury sustained by the plaintiff. 280 Ga. App. at 382 (3). We rejected that argument, noting that the offense of hit-and-run "appears in that portion of the Georgia Code entitled 'Uniform Rules of the Road' — the same chapter containing prohibitions on speeding, failure to maintain lane, and other moving violations." (Footnote omitted.) Id. at 382-383 (3). We held that a jury could reasonably conclude that the employee's hit-and-run conviction indicated that he would be an incompetent driver and that the employer failed to exercise reasonable care in hiring and retaining the driver when it violated its own policy by failing to obtain the prospective employee's driving record. Id. at 383 (3).

It follows that a jury must resolve the issues of whether Williams' moving violations (speeding) indicated that he would be an incompetent driver and whether Griffin failed to exercise reasonable care in hiring and retaining him. *Western Indus. v. Poole*, 280 Ga.

App. at 383 (3). Accordingly, the trial court erred in granting Griffin's motion for summary judgment on this claim. Id.; *Cherry v. Kelly Svcs.*, 171 Ga. App. 235, 236 (2) (319 SE2d 463) (1984) (The employer's actual knowledge of one traffic violation committed by the employee created a question of fact as to whether the employer should have inquired further into an employee's driving record before hiring him.).

4. The appellant contends that there was no evidence that the methadone drug therapy Coe was receiving at the time of the accident would have impaired his driving and that there was no evidence that he was taking any other drugs during the two months before the accident. As a result, she contends, evidence of Coe's previous drug use and methadone drug therapy would have no probative value and admission of such evidence would induce the jury to speculate. She contends that the trial court therefore erred in overruling her objections to medical testimony on the issue and in denying her motion in limine to such evidence. "We review a trial court's decisions on the admissibility of evidence under an abuse of discretion standard." (Citations, punctuation and footnote omitted.) *Fuller v. Flash Foods*, 298 Ga. App. 217, 220 (2) (679 SE2d 775) (2009).

In this case, there is evidence that the lane in which Coe was traveling was eight feet, ten inches wide, that Griffin's tractor-trailer protruded two feet, seven inches into that lane, and that Coe's car was five feet, five inches wide, which would authorize a jury to find that there was enough room in Coe's lane of travel for his car to pass the tractor-trailer safely. In addition, there is evidence that Coe's car did not leave any skid marks and that his reaction time may have been slower than a typical driver. It is undisputed that Coe received a dose of 120 mg of methadone every morning as treatment for an addiction to the opiate oxycodone and that he received that dose a few hours before the accident. Further, there is evidence that methadone is a central nervous system depressant and, depending on the dose, the user's tolerance, and other factors, can cause fainting and dizziness and may impair the user's ability to drive or operate machinery. See OCGA § 16-13-26 (2) (K) (methadone is a Schedule II controlled substance). Although Coe's doctor opined that, on the day of the accident, Coe would have had normal reflexes and would have been "perfectly fine to drive," the evidence did not establish as a matter of law that Coe's ingestion of methadone on the morning of June 30, 2006, did not contribute to the accident.[8]

---

[8] See *Smith v. Commonwealth of Kentucky*, 181 SW3d 53, 60 (Ky. App. 2005) (Evidence that, three hours before being involved in a vehicular accident, the defendant took her daily

Consequently, the trial court did not abuse its discretion in denying the appellant's motion in limine. *Bd. of Regents &c. v. Casey*, 300 Ga. App. 850, 853 (2) (686 SE2d 807) (2009).

*Judgment affirmed in part and reversed in part. Barnes, P. J., Phipps, P. J., and McFadden, J., concur. Miller, P. J., concurs in judgment only. Andrews and Doyle, JJ., concur in part and dissent in part.*

ANDREWS, Judge, concurring in part and dissenting in part.

The undisputed evidence in this case establishes that, as a matter of law, neither the contractor Carroll nor the trucking company Griffin can be liable for the consequences of the truck driver Williams's personal and unauthorized decision to drive past six restaurants and some miles off his route to pick up his lunch at a church. I therefore dissent to Divisions 1 and 2 of the majority opinion.

1. It is longstanding law that where a party hires a vehicle but has

> "no supervision or control of the servant's mechanical operation thereof, and no right to discharge the driver and take over the operation of the vehicle himself or put it in the hands of another to operate, *the owner of the vehicle who employs the driver, rather than the hirer*, is responsible for the driver's negligence."

(Emphasis supplied.) *Montgomery Trucking Co. v. Black*, 231 Ga. 211, 213 (200 SE2d 882) (1973), quoting *Ellison v. Evans*, 85 Ga. App. 292, 296 (69 SE2d 94) (1952).

Here, the evidence is undisputed that Carroll did not request any specific driver when it hired the truck at issue from Griffin; that Griffin, not Carroll, told Williams where to report on a given day, including the day of the accident; that Carroll had no duty to instruct Williams as to when he could take a lunch break; and that though Carroll could have requested that Williams not be sent back to a jobsite, it did not have the right to fire him. It is likewise undisputed that Williams maintained mechanical control over the truck at all times on the day of the accident, that he passed six restaurants in the course of driving at least 2.5 miles[9] between the dump where he left

---

maintenance dose of 120 mg of methadone, plus another medication, and evidence of the side effects of the medications was relevant to the issue of whether the defendant knew or should have known that it was unsafe for her to drive.).

[9] Although the trial court cited two record sources for its conclusion that the church was 2.5 miles off Williams's route, these sources show that Williams was as much as 5 miles away

the trash and the church, and that he parked the truck with more than two feet of its driver's side back corner protruding into the roadway.

Because Carroll did not supervise the mechanical operation of Williams's truck, it cannot be held liable for any negligent act Williams committed while operating the truck, including the illegal parking that was the alleged cause of the accident at issue here. The fact that Carroll could or did instruct Williams what trash to pick up and where to dispose of it has no bearing on this result. As we held in *Flowers v. U.S.S. Agri-Chemicals*, 139 Ga. App. 430 (228 SE2d 392) (1976):

> *Notwithstanding the work was performed under the supervision of an employee of the corporation,* who directed the driver of the truck what soil to haul, where to haul it, and when to haul it, and this was the only supervision or control exercised by the corporation over the driver and the truck, and the corporation had no supervision, direction, or control over the driver's mechanical operation of the truck, and had no right to discharge the driver or replace him or the truck, *although the corporation may have had the right to discharge the unit consisting of the driver and the truck by terminating the contract with the owner, the driver of the truck was an employee of the owner of the truck and not of the corporation.*

(Citations and punctuation omitted; emphasis supplied.) Id. at 432; see also *Helms v. Young*, 130 Ga. App. 344, 351 (203 SE2d 253) (1973); *Brett v. Thiele Kaolin Co.*, 86 Ga. App. 506 (1) (71 SE2d 687) (1952); *Albert v. Hudson*, 49 Ga. App. 636 (1) (176 SE 659) (1934). In short, there is "nothing in the record to show that the collision occurred as a result of any directions given [to] the driver" by Carroll. *Montgomery Trucking Co.*, 231 Ga. at 213 (affirming grant of summary judgment to hirer of truck). It follows that the trial court did not err when it granted summary judgment to Carroll under Coe's bailment theory.

2. "Where an employee takes a break for lunch and is not otherwise engaged in his employer's business, the employee is on a purely personal mission," with the result that his employer cannot be held liable for injuries resulting from the employee's negligent act. *Gassaway v. Precon Corp.*, 280 Ga. App. 351, 353 (634 SE2d 153) (2006).

---

from the dump where he had left the load of trash.

It is true that where there is a "slight deviation" from the master's business, "the question should ordinarily be submitted to the jury" whether or not the deviation was "so slight as not to affect the master's responsibility for the negligent act." (Punctuation omitted.) *Davis Gas Co. v. Powell*, 140 Ga. App. 841, 844 (1) (232 SE2d 258) (1976). Likewise, under the so-called "special mission" exception, an employer may be liable for injuries resulting from an employee's driving when the employee is "on his way home after performing, or on the way from his home to perform, some special service or errand or the discharge of some duty incidental to the nature of his employment in the interest of, or under direction of, his employer." *Jones v. Aldrich Co.*, 188 Ga. App. 581, 583 (1) (373 SE2d 649) (1988).

There is no evidence in this case, however, that Williams's detour served anyone's purpose other than his own. Williams was authorized to use the truck to deliver materials and supplies, to run business errands, and to get to and from his various job assignments, but not to pick up lunch for other employees or to drive off route for any reason. The fact that either Carroll or Griffin may have sometimes permitted drivers to bring or pick up a lunch along their assigned route does not show that Williams was authorized to depart from his route to the extent he did on the day of the collision. On the contrary, the undisputed evidence shows that when Williams went miles off route and parked his truck, he was not authorized to do so by either Carroll or Griffin. In other words, Coe cannot show that Williams's parking of his truck for the purpose of picking up his lunch was "within the scope of the *actual transaction of the master's business for accomplishing the ends of his employment*." (Punctuation omitted; emphasis supplied.) *Gassaway*, 280 Ga. App. at 353. It follows that the trial court did not err when it granted summary judgment on Coe's count concerning Griffin's liability under a theory of respondeat superior.

I am authorized to state that Judge Doyle joins in this opinion.

DECIDED MARCH 25, 2011 — ■■■■■■■

*Savage & Turner, R. Bartley Turner, Ashleigh R. Madison*, for Coe.

*Ellis, Painter, Ratterree & Adams, R. Clay Ratterree, Kimberly Cofer Harris*, for Carroll & Carroll, Inc.

*Barrow & Ballew, Walter W. Ballew III, Travis D. Windsor, R. Stephen Sims*, for Griffin Contracting, Inc.